## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

LYNDAL KENNETH WILKINS,

     Petitioner,

v.                                    Case No.  3:18-cv-1361-LC-MJF

SECRETARY OF FLORIDA DOC,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Lyndal Kenneth Wilkins, proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 17). Wilkins replied. (Doc. 22). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter and that Wilkins is not entitled to habeas relief.[1]

_____

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.    BACKGROUND FACTS AND PROCEDURAL HISTORY

This case involves Wilkins's negotiated plea of *nolo contendere* to four crimes: (1) Burglary of a Dwelling While Armed with Explosives or a Dangerous Weapon; (2) Aggravated Stalking by Credible Threat; (3) Possession of a Short-Barreled Rifle or Shotgun or Machine Gun; and (4) Possession of Burglary Tools. Wilkins challenges his plea primarily on grounds relating to its voluntariness and his competency to enter it. In order to provide context for his claims, the undersigned provides an extensive review of the proceedings leading up to Wilkins's plea, as well as the plea proceeding itself.

In Santa Rosa County Circuit Court Case No. 07-CF-1367, Wilkins was charged with five crimes: (1) Burglary of a Dwelling While Armed with Explosives or a Dangerous Weapon; (2) Attempted Armed Kidnapping with a Weapon; (3) Aggravated Stalking by Credible Threat; (4) Possession of a Short-Barreled Rifle or Shotgun or Machine Gun; and (5) Possession of Burglary Tools. (Doc. 17-1, Ex. A at 121-22 in ECF (Fifth Am. Information)).[2] The victim was Wilkins's former

---

[2] Citations to the state court record are to the electronically-filed exhibits attached to the State's answer (Doc. 17). The court cites the attachment number followed by the lettered exhibit and the page number assigned by the court's Electronic Case Filing (ECF) system. The court ordinarily would use the page number of the original document, or a Bates stamp number, but not all documents in the state court record have such a number.

girlfriend, Amanda Stevens. (*Id*.). Ms. Stevens's harrowing ordeal is described in the arrest report which formed the factual basis for Wilkins's plea of *nolo contendere*. (Doc. 17-1, Ex. A at 25-26 (Arrest Report); Ex. A at 123-27 (Plea Agreement); Doc. 17-1, Ex. C (Tr. of Plea Hr'g)).

Approximately seven months after the charges were filed, Wilkins's retained counsel, Michael Griffith, filed a Notice of Intent to Rely on Insanity Defense; a Suggestion of Incompetence to Proceed; and a motion for the court to appoint two experts to evaluate those issues. (Ex. A at 53-59). On September 5, 2008, the trial court appointed Dr. Lawrence Gilgun to evaluate Wilkins's competency. (*Id*. at 65-67 (Order Appointing Gilgun for Competency Evaluation)).

Dr. Gilgun reported that Wilkins was uncooperative. (Doc. 17-1, Ex. B at 178-80 (Gilgun Report filed 10/24/08)). Gilgun was unable to determine whether Wilkins's lack of cooperation was due to his being severely disturbed or malingering. (*Id*.). Gilgun concluded that there was a "strong possibility" Wilkins was malingering. (*Id*.). However, given the seriousness of the charges and Wilkins's history of psychiatric illness, Gilgun recommended that Wilkins be placed in the Forensic Unit at the Florida State Hospital for further observation and evaluation where he could be observed around the clock. (*Id*.).

On December 2, 2008, the State moved for the appointment of a second expert to evaluate Wilkins's competency. (Doc. 17-1, Ex. A at 69-71). The trial court granted the motion and appointed Dr. Harry McClaren to evaluate Wilkins's competency. (*Id*.). The court also appointed Gilgun and McClaren to evaluate Wilkins's sanity at the time of the crimes. (*Id*. at 72-75 (Orders Appointing McClaren and Gilgun for Sanity Evaluations). The court scheduled a competency hearing for March 10, 2009. (Doc. 17-1, Ex. A at 17 (Docket Sheet)).

Dr. McClaren concluded that Wilkins was competent to proceed and that there was a strong indication Wilkins's clinical presentation was influenced by malingering. (Doc. 17-1, Ex. B at 181-85 (McClaren Report dated 12/31/08 and filed 1/16/09)). Dr. McClaren supplemented his report on January 16, 2009, with his evaluation of Wilkins's sanity at the time he committed the crimes. McClaren concluded that his evaluation did not support an adjudication of insanity. (Doc. 17-1, Ex. B at 187-89 (McClaren addendum dated 1/16/09 and filed 1/22/09)).

On March 10, 2009, Wilkins's competency hearing was continued to June 10, 2009. (Doc. 17-1, Ex. A at 17 (Docket Sheet)).

Dr. Gilgun interviewed Wilkins again on May 20, 2009. (Doc. 17-2, Ex. E at 79-81). On June 4, 2009, Gilgun informed the court by letter that he had listened to audio recordings of several telephone calls Wilkins made from the jail to family and

friends between September 27, 2007 and March 19, 2009, and that he concluded (1) Wilkins was malingering during Gilgun's competency interviews and (2) Wilkins was competent to proceed. (Doc. 17-1, Ex. B at 190-92). Gilgun's letter was filed in court on June 10, 2009. (Doc. 17-1, Ex. B at 190-92).

The case was placed on the trial calendar for August 31, 2009. (Doc. 17-1, Ex. A at 18-19 (Docket Sheet indicating issuance of trial subpoenas)).

On August 26, 2009, Attorney Griffith filed an amended motion for suggestion of incompetence to proceed. (Doc. 17-1, Ex. A at 92-94). The parties appeared in court on August 27, 2009. The court reappointed Dr. Gilgun and Dr. McClaren to evaluate Wilkins's competency, and scheduled a competency hearing for August 31, 2009. (Doc. 17, Ex. A at 97-98). Both experts determined that Wilkins was competent to proceed. (Doc. 17-1 Ex. B at 228-29 (McClaren Report dated 8/31/09); Ex. B at 173 (Gilgun Report dated 8/31/09)).

On August 31, 2009, Wilkins moved to disqualify the trial judge based on statements the judge made during the August 27, 2009, docket day which "indicated that he has already made his mind up" on the issue of Wilkins's competency. (Ex. A at 101-07). The presiding judge disqualified himself, and a new judge was assigned. (Ex. A at 108). On September 10, 2009, Wilkins's competency hearing was rescheduled to October 23, 2009. (Doc. 17-1, Ex. A at 20 (Docket Sheet)).

On September 30, 2009, Attorney Griffith moved to withdraw as Wilkins's counsel. (Doc. 17-1, Ex. A at 113). The matter was heard on October 8, 2009. (Doc. 17-1, Ex. A at 20 (Docket Sheet)). On October 13, 2009, the court granted Griffith's motion to withdraw, appointed the public defender to represent Wilkins, and ordered that Wilkins's next court appearance be for a docket day on January 11, 2010. (Ex. A at 116). At the January 11, 2010, docket day, Wilkins's competency hearing was scheduled for February 17, 2010. (Doc. 17-1, Ex. A at 21 (Docket Sheet)).

Wilkins's Public Defender, Sam Hall, obtained a new competency evaluation by a third expert—Dr. James Larson. (Doc. 17-1, Ex. B at 193-98). On February 9, 2010, Larson determined that Wilkins was not competent to proceed. (*Id.*).

The parties appeared for the competency hearing on February 17, 2010. (Doc. 17-2, Ex. E (Tr. of Hr'g)). Appointed counsel Hall announced that he was ready to proceed and called Dr. Larson as his first witness. (*Id.* at 45-48). After qualifying Larson as an expert, Hall asked Larson to testify concerning his competency evaluation. (*Id.* at 54). Larson noted that he was hired by the defense to perform an evaluation subject to the attorney-client privilege; that he had not been released from that privilege; and that he could not discuss the evaluation until released. (*Id.*). Hall indicated that he would release Larson, but the prosecutor questioned whether the waiver must come from Wilkins personally. (*Id.* at 54-55).

Hall conferred with Wilkins privately, and then informed the court that Wilkins asked to speak with his mother. (*Id*. at 55-56). After Wilkins conferred with his mother, Hall advised the court that Wilkins informed him that "there is some question as to whether or not they're going to hire Randy Etheridge to represent [Wilkins]." (*Id*. at 56). Attorney Etheridge was contacted by telephone and addressed the court. Etheridge informed the court that "the only way" he would agree to represent Wilkins was if Wilkins obtained a continuance of the competency hearing. (Doc. 17-2, Ex. E at 109). Etheridge also informed the court that Wilkins had just disclosed that he "was seen by a new doctor at the jail, a Doctor Martin who currently as of Sunday has him on Thorazine," and that Dr. Larson was just informed of that information as well. (*Id*.).

The trial court denied a continuance; Etheridge hung up; and the hearing proceeded with Hall representing Wilkins. The court heard testimony from the three experts who examined Wilkins for competency—Dr. Gilgun, Dr. McClaren and Dr. Larson—as well as other evidence relating to Wilkins's competency, including the audio recordings of phone calls Wilkins made from jail to a friend.

The trial court adjudged Wilkins competent to proceed; granted a continuance of Wilkins's trial from March 22, 2010, to May 24, 2010; and set a docket day for April 29, 2010. (*Id*. at 198-99).

Page 7 of 117

Etheridge filed a notice of appearance on March 17, 2010. (Doc. 17-4, Ex. N at 20). At the April 29, 2010, docket day, the court set the matter for trial on July 12, 2010. (Doc. 17-1, Ex. A at 21 (docket sheet)).

On June 2, 2010, Etheridge moved for rehearing of Wilkins's competence to proceed and requested another competency hearing. (Doc. 17-1, Ex. A at 119-120). Etheridge retained a fourth expert, Dr. Brett Turner, to evaluate Wilkins's competency. (Ex. B at 199-205). On July 8, 2010, Dr. Turner determined that Wilkins was competent to proceed but suffered from some type of mental illness that was difficult to pinpoint because Wilkins was uncooperative. (*Id*.).

On July 9, 2010, Wilkins, still represented by Etheridge, entered a negotiated plea agreement with the State, memorialized on a form titled "Sentence Recommendation." (Doc. 17-1, Ex. A at 123-27). Under the plea agreement, the State agreed to *nolle prosequi* Count 2 (the attempted armed kidnapping charge) in exchange for Wilkins's plea of *nolo contendere* to the remaining charges—Counts 1, 3, 4 and 5. (*Id*. at 23). There was no agreement on the appropriate sentence. (*Id*.). Instead, Wilkins's plea was a "straight up plea" with his sentence left "to court's discretion." (*Id*.). Wilkins stipulated on the plea form that the factual basis for his plea was outlined in the arrest report, offense report, or probable cause affidavit. (*Id*.).

The prosecutor and defense counsel addressed the court:

**MR. PARKER** [Prosecutor]: Judge, before the State is willing to agree to dismiss Count 2, there was previously an evaluation done by Dr. Bret[t] Turner who did a psychological evaluation of the defendant and the State would request that those results be disclosed to the court for your review prior to us agreeing to dismiss that count and it would address some of the issues that have been dealt with previously in this case concerning his competency, and I believe, certainly the court needs to be apprised of that status today before accepting the plea.

**MR. ETHERIDGE** [Defense Counsel]:  Your Honor, we concur on that recommendation by the State, and quite frankly, that's why we're here on the 11th hour. Dr. Turner, he examined my client last week and I want to protect myself and also Mr. Wilkins' interest. His father or grandfather passed away [s]o we didn't [get] the report in our hands until yesterday, at which time I went and talked to Mr. Wilkins, and in that particular report, it indicates that he finds him competent to proceed.

He does suggest any further testing be done at the Florida State Hospital, and he was basically very convinced in his evaluation that, indeed, Mr. Wilkins is competent to proceed, and as an officer of the court it is my assurance to the court that in my dealings and speaking with Mr. Wilkins, he's coherent and understands the nature of the charges, and together with the other factor[s] that Your Honor went into great detail in that previous hearing, and I am well-satisfied that he's competent to proceed, and as I said, Your Honor, he's entering this plea because he feels it's in his best interest, and he is coherent and understands exactly what's going on today, but once again, I'll defer to the court and Mr. Parker to make the proper inquiry, but we have agreed to stipulate to that being placed in the record, Your Honor.

(Doc. 17-1, Ex. C at 234-36). The prosecutor provided the court with a copy of Dr.

Turner's evaluation. (*Id*. at 236).

The prosecutor conducted a thorough and detailed colloquy with Wilkins, including questions related not only to the voluntariness of Wilkins's plea, but also his competence to proceed. (Doc. 17-1, Ex. C (Tr. of Plea Hr'g)). Wilkins and the State stipulated to the factual basis for the plea, and the State *nolle prossed* Count 2. (*Id*. at 248-49). The trial judge conducted her own colloquy with Wilkins and determined that Wilkins's plea was "freely, voluntarily, knowingly and intelligently made." (*Id*. at 248-51). The court accepted Wilkins's plea; ordered a Pre-Sentence Investigation; and set the matter for a sentencing hearing. (*Id*. at 251-52).

On September 23, 2010, the trial court adjudicated Wilkins guilty of all counts and sentenced him on Count 1 to a term of life imprisonment with a 10-year mandatory minimum. (Doc. 17-1 Ex. D (Tr. of Sentencing); Doc. 17-1, Ex. A at 143-49 (J. and Sentence)). The court sentenced Wilkins to five years of imprisonment on Count 3; fifteen years of imprisonment on Count 4; and five years of imprisonment on Count 5, all concurrent with Count 1. (*Id*.). The court also imposed a term of life imprisonment on Count 2, concurrent with the sentence imposed on Count 1. (*Id*.).

Wilkins filed a *pro se* motion to withdraw plea. (Doc. 17-4, Ex. N at 37-42; *see also* Doc. 17-2, Ex. E at 28-32). The trial court struck the motion because Wilkins was represented by counsel. (Doc. 17-2, Ex. E at 26-27).

Wilkins appealed his convictions and sentences. (Doc. 17-1, Ex. A at 160, 163-64). Wilkins's appellate counsel filed an *Anders*[3] brief. (Doc. 17-2, Ex. F). Wilkins filed a *pro se* initial brief. (Doc. 17-2, Ex. G). On January 24, 2012, the Florida First District Court of Appeal ("First DCA") affirmed Wilkins's judgments and sentences for Counts 1, 3, 4 and 5. *Wilkins v. State*, 90 So. 3d 305 (Fla. 1st DCA 2012) (copy at Doc. 17-2, Ex. M). The court reversed Wilkins's judgment and sentence for Count 2, finding that Wilkins was improperly convicted and sentenced for Count 2 after the State *nolle prossed* that charge. The court remanded Wilkins's judgment and sentence for Count 2 with instructions to the trial court to vacate the imposition of sentence for Count 2, and with instructions to the clerk of the court to amend its records to reflect the announcement of a *nolle prosequi* of Count 2 by the State. (*Id.*).

On February 29, 2012, the trial court vacated Wilkins's judgment and sentence as to Count 2 and directed the entry of a corrected judgment and sentence. (Doc. 17-2, Ex. N at 306-07).[4]

---

[3] *See Anders v. California*, 386 U.S. 738 (1967).

[4] The corrected judgment and sentence was entered on December 3, 2015. (Doc. 17-3, Ex. N at 145-50).

On February 18, 2013, Wilkins filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended and supplemented. (Doc. 17-2, Ex. N at 308-51 (Original Mot.); Doc. 17-3, Ex. N at 13-64 (Am. Mot. and Suppl.); *Id*. at 165-70 (Letter Suppl.)). The state circuit court granted a limited evidentiary hearing and appointed counsel to represent Wilkins. (Doc. 17-3, Ex. N at 93-96, 107).[5] The evidentiary hearing was held on December 23, 2015. (Doc. 17-5, Ex. Q at 2-115). After the hearing, the state court denied relief on all claims. (Doc. 17-3, Ex. N at 192-271 — Doc. 17-4, Ex. N at 1-45 (Order with Attach.)). Wilkins appealed, and the appeal was assigned Case No. 1D16-648. (Doc. 17-4, Ex. N at 76).

While his postconviction appeal was pending, Wilkins filed a *pro se* belated motion to withdraw plea in the state circuit court on February 9, 2016. (Doc. 17-4, Ex. N at 70-73). The state circuit court dismissed the motion on February 18, 2016. (Doc. 17-4, Ex. O at 97 (docket entry)). Wilkins filed a notice of appeal in his pending postconviction appeal, Case No. 1D16-648. (Doc. 1 at 3).

---

[5] Originally, the evidentiary hearing was limited to Ground 16. (Doc. 17-3, Ex. N at 93-96, 107). At the outset of the hearing, however, Wilkins's counsel requested, and the State agreed, to expand the scope of the hearing to include an additional issue. (Doc. 17-5, Ex. Q at 6-9).

On June 1, 2017, the First DCA affirmed in Case No. 1D16-1648, without an opinion. *Wilkins v. State*, 277 So. 3d 50 (Fla. 1st DCA 2017) (Table) (per curiam) (copy at Doc. 17-5, Ex. T). The mandate issued August 28, 2017. (Doc. 17-5, Ex. V).

On July 18, 2017, Wilkins filed another *pro se* motion for postconviction relief under Rule 3.850, asserting two claims of ineffective assistance of postconviction counsel. (Doc. 17-5, Ex. W at 194-217). The state circuit court denied the motion on July 31, 2017. (Ex. W at 222-23). The First DCA affirmed without an opinion. *Wilkins v. State*, No. 1D17-3629, 239 So. 3d 3 (Fla. 1st DCA 2018) (Table) (per curiam) (copy at Doc. 17-5, Ex. Y). The mandate issued March 23, 2018. (Doc. 17-5, Ex. AA).

On July 25, 2017, Wilkins filed a *pro se* motion to correct sentence under Florida Rule of Criminal Procedure 3.800(a). (Doc. 17-5, Ex. W at 218-20). The state circuit court denied the motion on September 11, 2017. (Ex. W at 227-51). The First DCA dismissed the appeal on January 26, 2018, without an opinion. *Wilkins v. State*, No. 1D17-4388, 253 So. 3d 1068 (Fla. 1st DCA 2018) (Table) (per curiam). The mandate issued April 9, 2018.

Wilkins filed his *pro se* federal habeas petition on May 17, 2018, raising eighteen claims. (Doc. 1). The State asserts that Wilkins is not entitled to habeas

relief because his claims are either procedurally defaulted or meritless. (Doc. 17). After thorough review of all claims, this case turns *primarily* on three issues— whether a fairminded jurist could agree with the state court's conclusions that: (1) Wilkins received procedural due process on the issue of his competency; (2) Wilkins was competent to enter his *nolo contendere* plea; and (3) Wilkins entered his *nolo contendere* plea knowingly and voluntarily.

## II.    RELEVANT LEGAL STANDARDS

### A.    Federal Habeas Exhaustion Requirement

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his federal claim to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). A claim that was not properly presented to the state court

and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *Boerckel*, 526 U.S. at 839-40.

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).The *Schlup* standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

## B.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable

---

[6] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in

light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of

state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Id.* at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue

unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## C.    Clearly Established Law Governing Competency Claims

The "conviction of an accused person while he is legally incompetent violates due process." *Pate v. Robinson*, 383 U.S. 375, 378 (1966) (citing *Bishop v. United States*, 350 U.S. 961 (1956)). A defendant is incompetent if he lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (internal quotation marks omitted) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Competence to plead guilty is measured by the same standard as competence to stand trial. *Id.* at 396, 398.

When evidence raises a "bona fide doubt" of a defendant's competence to proceed, due process requires that a court hold an adequate hearing regarding competency. *Pate*, 383 U.S. at 385 (holding that when the evidence "raises a bona fide doubt as to a defendant's competence to stand trial, the judge on his own motion must . . . conduct a [competency hearing].") (quotation marks omitted); *Drope v. Missouri*, 420 U.S. 162, 180 (1975) (holding that when the evidence "create[s] sufficient doubt" about the defendant's competence to stand trial, a competency

hearing is constitutionally required); *see also Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995) ("To prevail on the procedural claim, a petitioner must establish that the state trial judge ignored facts raising a bona fide doubt regarding the petitioner's competency to stand trial.").

A procedural competency claim (*i.e.*, a *Pate* claim) necessarily is confined to information presented to the trial court. *See Pate*, 383 U.S. at 378 (analyzing a procedural competency claim by reviewing the conduct of the trial and the evidence touching on the question of the defendant's competence at that time); *Drope*, 420 U.S. at 180 (same); *Fallada v. Dugger*, 819 F.2d 1564, 1568 (11th Cir. 1987) (holding that a *Pate* analysis focuses on "what the trial court did in light of what it then knew, [and] whether objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency"); *see also Medina*, 59 F.3d at 1106 (noting that a *Pate* claim "can and must be raised on direct appeal because an appellate court hearing the claim *may consider only the information before the trial court before and during trial*.") (emphasis added).

In assessing this information, the Supreme Court in *Drope* elaborated:

The import of our decision in *Pate v. Robinson* is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient.

There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated. That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180.

Nonetheless, "[a] finding that a defendant is competent to stand trial . . . is not all that is necessary before he may be permitted to plead guilty." *Godinez*, 509 U.S. at 400. A trial court also must "satisfy itself that the [defendant's] waiver of his constitutional rights is knowing and voluntary." *Id*. at 400-01.

## D.    Clearly Established Law Governing Guilty and *Nolo Contendere* Pleas

"A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) (en banc) (citing *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969)). The Due Process Clause requires that a guilty plea be entered knowingly and voluntarily. *Boykin*, 395 U.S. at 243 n.5; *see also Bousley v. United States*, 523 U.S. 614, 618 (1998). In determining the validity of a plea to a criminal charge, a plea of *nolo contendere* stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36 (1970); *Hudson v. United States*, 272 U.S. 451, 455 (1926); *see also Florida v. Royer*, 460 U.S. 491, 495 n.5 (1983) ("Under Florida law, a plea of nolo

contendere is equivalent to a plea of guilty."). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir.1995) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. Accordingly, in the context of a guilty plea, the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *Alford*, 400 U.S. at 31; *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent *insofar as it affects the defendant's knowledge and understanding*. *See McMann v. Richardson*, 397 U.S. 759, 770-71 (1970).

"Once a plea of guilty [or *nolo contendere*] has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983); *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

This waiver includes claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *McMann*, 397 U.S. at 770-71 (holding that the assistance of counsel received by a defendant is relevant to the question of whether the defendant's guilty plea was knowing and intelligent *insofar as it affects the defendant's knowledge and understanding*); *see also Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015) (holding that the waiver rule "includes any claim of ineffective assistance of counsel unless the deficient performance relates to the voluntariness of the plea itself") (citing *McMillin v. Beto*, 447 F.2d 453, 454 (5th Cir. 1971); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983)).

The Supreme Court explained in *Tollett v. Henderson*, 411 U.S. 258 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Id.* at 267.

The advantages of entering a plea only may be secured "if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). Recognizing that a prisoner often "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea," courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony. *Id.*

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted). "The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011).

When a petitioner challenges the voluntariness of his plea based on allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Premo*, 562 U.S. at 118 (identifying *Strickland* as the clearly established

federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

The focus of *Strickland*'s performance prong in a plea situation is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56-57 (quoting *McMann*, 397 U.S. at 771). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). "To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client." *Id.* (citing *Walker v. Caldwell*, 476 F.2d 213, 217 (5th Cir. 1973), *in turn citing Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948)).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused regarding the plea. *Stano*, 921 F.2d at 1150-51 (citing *McMann*, 397 U.S. at 774; *Tollett*, 411 U.S. at 267; and *Hill*, 474 U.S. at 56).

To meet *Strickland*'s prejudice prong in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.*, 474 U.S. at 58-59. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are

mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting

*Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371

(2010). "Establishing that a state court's application of *Strickland* was unreasonable

under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations

omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## III.   DISCUSSION

**Ground One**          **"Petitioner asks this Court to determine on its own authority and rule he was unconstitutionally denied the 6th Amendment right to Counsel of Choice and therein the 14th Amendment right to Due Process at his competency hearing, which resulted in a decision that was contrary to and involved an unreasonable application of clearly established Federal law as established by the Supreme Court, 28 U.S.C. § 2254(d)(1) and an unreasonable determination of the facts in light of the evidence known by the trial judge, 28 U.S.C. § 2254(d)(2)." (Doc. 1 at 4).**

Wilkins claims that the trial court violated his constitutional right to counsel of choice at the February 17, 2010, competency hearing. Wilkins alleges:

> Petitioner hired private counsel, Randall Etheridge to represent him at his competency hearing. Counsel informed the court he had been hired to replace appointed counsel to present new evidence about defendant's new diagnosis and new medication, from his current, treating psychiatrist – neither of which the public defender nor the judge was aware of, and requested a continuance to prepare and present this new condition and evidence. Judge Marci Goodman denied the request and in doing so, counsel of choice; never citing the request was for the purpose of delaying trial, and therefore did not allow the new evidence which was essential for current competence determination. Trial court stated, "such a claim of judicial error should have been raised . . . on direct appeal." It was.

(Doc. 1 at 4-5). Wilkins asserts that he exhausted this claim by presenting it in his direct appeal as "Point 3" and "Point 9," and that he also raised it in his first Rule 3.850 proceeding as Ground 6. (Doc. 1 at 5).

The State interprets Wilkins's claim as an ineffective assistance of trial counsel claim, namely, that "trial counsel was ineffective for failing to properly represent him at his competency hearing." (Doc. 17 at 13). The State asserts that this ineffective assistance claim is procedurally defaulted because Wilkins never presented it to the state courts and is now procedurally barred from doing so. (*Id*. at 14-22).

The undersigned construes Wilkins's claim as one of trial court error, not ineffective assistance of trial counsel. Wilkins claims that the trial court deprived him of due process and his right to counsel of choice, when the court refused to grant a continuance of the competency hearing after Wilkins arranged to retain Etheridge mid-hearing, and Etheridge informed the court that he would not appear for Wilkins unless Wilkins obtained an adjournment and continuance. Wilkins claims he was forced to proceed with appointed counsel Hall and was unable to present new medical evidence concerning his competency.

### A.    Wilkins Exhausted This Claim By Presenting It In His Direct Appeal as "Point 3"

Wilkins raised this claim of trial court error in his direct appeal as "Point 3" of his *pro se* initial brief. (Doc. 17-2, Ex. G at 232-33). The First DCA rejected the claim without explanation in its January 24, 2012, summary affirmance of Wilkins's convictions for Counts 1, 3, 4 and 5. *Wilkins v. State*, 90 So. 3d 305 (Fla. 1st DCA 2012) (copy at Doc. 17-2, Ex. M).

Wilkins did *not* raise this claim as "Point 9" of his direct appeal. Wilkins's "Point 9" claimed this: "The Court Erred By Not Following Procedural Law As Set Forth In <u>Florida Rules of Criminal Procedure 3.210.</u> Et. Seq. In Regards To Appellant's Competency." (Doc. 17-2, Ex. G at 241). That is not the same Sixth

Amendment counsel-of-choice claim he presents here. *See Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004) (holding that a federal habeas petitioner does not satisfy the exhaustion requirement merely by presenting the state court with all the facts necessary to support his claim, or by presenting a somewhat similar claim; rather, "[t]he petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'") (quoting *Picard*, 404 U.S. at 277).

Wilkins also did not raise this claim of trial court error in his postconviction proceeding. Wilkins's Ground 6 of his amended Rule 3.850 motion claimed that *trial counsel Hall was ineffective* for failing to protect Wilkins's right to counsel of choice at the competency hearing. (Doc. 17-3, Ex. N at 28). Wilkins's present Sixth Amendment challenge to the trial court's ruling at the competency hearing is not the same claim as a Sixth Amendment ineffective assistance of trial counsel claim, even if the latter is based on counsel's failure to challenge the trial court's ruling. The two are separate and distinct for purposes of satisfying AEDPA's exhaustion requirement. *See Pietri v. Fla. Dep't of Corr.*, 641 F.3d 1276, 1289 (11th Cir. 2011) (holding that habeas petitioner's substantive judicial bias claim was not the same claim as his ineffective assistance of appellate counsel claim based on counsel's failure to raise the substantive claim on appeal; the two claims were "separate and

distinct" for purposes of the federal habeas exhaustion requirement) (citing *Lefroy v. Sec'y for Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 n.24 (11th Cir. 2005) (noting that a substantive claim is "separate and distinct" from an ineffective assistance claim based on counsel's failure to raise the substantive claim)); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (holding that habeas petitioner's ineffective assistance claim based on counsel's failure to object to a jury instruction was not the same as a substantive due process challenge to the trial court's giving of that instruction). Wilkins recognizes the fact that the claims are separate and distinct, because he has raised, as Ground Two of his federal habeas petition, a separate claim that appointed counsel Hall was ineffective for failing to protect his right to counsel of choice at the February 17, 2010, hearing. (*See* Doc. 1 at 5-6).

For the foregoing reasons, this court rejects the State's procedural default defense and concludes that Wilkins exhausted his claim of trial court error by presenting it as "Point 3" in his direct appeal.

## B.    Section 2254 Review of State Court's Decision

The First DCA's decision is subject to § 2254(d)'s deferential standard of review. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-

law procedural principles to the contrary."); *id.* at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudication on the merits.'").

Where the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*. According to *Richter*, "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[] there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." *Id.* at 102.

## 1.    *Precedent Concerning the Right to Counsel of Choice*

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S.C.A. VI Amend. The United States Supreme Court has held that "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). *Cf. Powell v. Alabama*,

287 U.S. 45, 53 (1932) ("It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."). A defendant may substitute a retained or appointed counsel with retained counsel "regardless of the quality of the representation he received." *Gonzalez-Lopez*, 548 U.S. at 148.

"The right to counsel of choice, however, unlike the right to counsel in general, is not absolute." *Birt v. Montgomery*, 725 F.2d 587, 593 (11th Cir. 1984); *Luis v. United States*, 578 U.S. ___, 136 S. Ct. 1083, 1089 (2016) ("This 'fair opportunity' for the defendant to secure counsel of choice has limits."); *Wheat*, 486 U.S. at 159 ("The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects."). "At some point, that right must bend before countervailing interests involving effective administration of the courts." *Birt*, 725 F.2d at 593 (citing *Gandy v. Alabama*, 569 F.2d 1318, 1323, n.9 (5th Cir. 1978) ("Desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice.")). The Supreme Court has recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of its calendar."

*Gonzalez-Lopez*, 548 U.S. at 152 (citing *Wheat*, 486 U.S. at 163-64; *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)).

"[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris*, 461 U.S. at 11-12 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). The Court in *Ungar* held that there are no tests for determining whether a "denial of a continuance is so arbitrary [that it] violate[s] due process," and that the determination must be based on the circumstances of each individual case:

> There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

376 U.S. at 589 (citations omitted).

### 2.    *Review of State Court's Decision under 28 U.S.C. § 2254(d)*

The "contrary to" prong of the AEDPA standard is not implicated here. A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "confronts facts that are materially indistinguishable from a relevant Supreme

Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams*, 529 U.S. at 405-06. The Supreme Court has not addressed a claim precisely like Wilkins's, nor has it ruled on a "materially indistinguishable" set of facts. The trial court's denial of a continuance occurred under these circumstances.

Wilkins was represented at the February 17, 2010, competency hearing by appointed counsel Hall. (Doc. 17-2, Ex. E at 44). Hall was appointed on October 13, 2009, after retained counsel Griffith withdrew. (Doc. 17-1, Ex. A at 116). Wilkins had four months to retain new counsel.

At the opening of the competency hearing on February 17, 2010, the court asked the defense if it was ready to proceed. (Doc. 17-2, Ex. E at 45). Hall answered, "We are ready, Your Honor." (*Id.*). The prosecutor (Mr. Elmore) informed the court that Wilkins had been examined by two court-appointed experts and that the defense had had him evaluated by a third expert, Dr. Larson. (*Id.* at 45-46). Elmore stated that although he was just provided Larson's report that day, he would not request a continuance "because this case has been going on forever and it's the State's position that that's due to a concerted effort by the defendant to delay the proceedings." (*Id.* at 46). Elmore also stated that despite the late notice of Larson's report, he did not object to the defense calling Larson to testify, and that he was prepared to cross-examine him. (*Id.*).

Hall called Dr. Larson to testify about his competency evaluation of Wilkins.

After establishing Larson's qualifications, this exchange occurred:

**Q**. [Defense Counsel Hall]:        When did you first get involved?

**A**. [Dr. Larson]:    First of all, as a technical matter, you asked me to evaluate him and you asked me to do so under attorney-client privilege, and I haven't been released from privilege so it would be improper for me to answer any more questions until I'm released from privilege.

**Q**:    Well, I can release you.

    **THE COURT**:    It's going to have to be you or your client.

    **MR. HALL**:        I mean, I could clearly release him.

    **THE WITNESS**: That's fine, I just need to have it on the record.

    **MR. ELMORE** [Prosecutor]:    Judge, I—Judge, because you're new to this case, there's a lot of—I guess there—I don't know if you studied the file and all.

    **THE COURT**:        No, not at all

    **MR. ELMORE**:    Part of the problem that's arisen in this case is the inability of the defense attorneys to deal with their client. And I don't know that Mr. Hall has had a conversation with his client in which his client has agreed to release the confidentiality of Doctor Larson's testimony. Michael Griffith withdrew from the case citing his inability to communicate with the defendant. You know, just my conversation with Mr. Hall, I think he has difficulty communicating with his client, as has every doctor had a difficulty communicating with him. So I don't know if that poses a problem for now or in the future that the defendant himself is not waiving the privilege as opposed to Mr. Hall simply waiving it for him.

**MR. HALL**:        I —

**MR. ELMORE**:   I wanted to make the Court aware of that.

**MR. HALL**:        I concur with that. I mean, I can have just a minute to talk to Mr. Wilkins and see.

**THE COURT**:    If you would.

(Pause in proceedings)

**MR. HALL**:        Your Honor, he'd like to talk to his mother about this.

**THE COURT**:    Okay, certainly. Where is his mom? Okay, ma'am, if you'll come talk with your son. Okay, ma'am, if you'll come and—

**MR. ELMORE**:   Y'all better take that purse away from her.

**THE MOTHER**:   (Indiscernible)

(Pause in proceedings)

**MR. HALL**:        Your Honor, talking to Mr. Wilkins, if I may, and also talking to his mother, there is some question as to whether or not they're going to hire Randy Etheridge to represent—

**THE COURT**:    That's—we're here. We're set for trial today. I mean, we're set for the incompetency hearing today, so.

**MR. HALL**:        Well, apparently he's been – he's not going to waive anything.

**THE COURT**:    Okay. All right. Well, I guess Doctor Larson then you are excused.

**THE WITNESS**: Thank you, Your Honor.

**MR. ELMORE**: Hold on for a minute just in case he changes his mind, if you don't mind.

**THE COURT**: Yeah, he might change his mind, Doctor Larson.

**MR. HALL**: Your Honor, is it possible we could call Mr. Etheridge's office and see technically if he's supposed to be involved in this or not?

**MR. ELMORE**: Doctor Larson has some—might could shed some light on that.

**THE COURT**: You can contact him if you wish.

**MR. HALL**: I'm sorry?

**THE COURT**: You can contact Mr. Etheridge's office if you wish.

. . . .

**MR. HALL**: Can we take a recess and I can call and see if I can talk with Mr. Etheridge?

**THE COURT**: Certainly.

(Pause in proceedings)

**MR. ELMORE**: Judge, in the meantime while Mr. Etheridge is being contacted, if Mr. Hall has no further witnesses other than Doctor Larson I'm prepared to go forward with the State's case.

**THE COURT**: Any objection?

**MR. ELMORE**:    And we can take hi[m] out of order if it pans out.

**MR. HALL**:        That's fine. I have no problem with that.

(Doc. 17-2, Ex. E at 54-57).

The court heard testimony from Dr. Gilgun. (*Id*. at 58-105). During a pause in the prosecutor's re-direct of Gilgun, the prosecutor interjected:

**MR. ELMORE**:    Judge, while he's looking for that would you like to confer with Mr. Etheridge?

**THE COURT**:    I think Mr. Hall and Mr. Etheridge may want to confer with Mr. Wilkins.

**MR. HALL**:        I need to—can I talk to Mr. Etheridge just briefly before we talk to—

**THE COURT**:    Go ahead.

**MR ETHERIDGE**:        Good afternoon, Your Honor. How are you?

**THE COURT**:    Hello, Mr. Etheridge. How are you?

(Pause in proceedings)

**MR. HALL**:        You think Mr. Wilkins can confer with Mr. Etheridge for a minute, Your Honor?

**THE COURT**:    Of course.

**MR. ETHERIDGE**:        And prior to that if I may speak to his mother just one moment, Your Honor.

**THE COURT**:    Okay, certainly. . . .

. . . .

(Recess)

**THE COURT**:    So did y'all have an opportunity to speak?

**MR. HALL**:    I think Mr. Etheridge—

**THE COURT**:    Yes, Mr. Etheridge?

**MR. ETHERIDGE**:    Your Honor, thank you, Your Honor. Randy Etheridge, Your Honor. I've had the opportunity to speak to Mr. Wilkins' family. Just to give the Court a brief background of my limited involvement in this case, I've been called on numerous occasions by members of Mr. Wilkins' family: his sister, Jalisia Wilkins, as well as his mother, who was present just a minute ago, Ms. Julia Wilkins. I went to go see Mr. Wilkins several days ago, spoke to him at length, quoted him as to what I would charge to handle his case. Called his sister and mother. Neither one of them had any funds to retain me, so I—and Mr. Wilkins indicated he could but had to go through some other means to do so.

I notified the family as a courtesy I was over here today anyway. As a courtesy, I came here early to speak to Mr. Wilkins. They hadn't brought him out yet and I hadn't met his mother yet. Since then, Your Honor, apparently they have made arrangements to retain my services, but *I informed them and I am informing Your Honor, too, the only way I could do that would be if the Court would grant a continuance so we could go forward*.

Several grounds for the continuance we would be asking for, Your Honor. Probably the first and foremost is that there's—and I had an opportunity to speak with Mr. Elmore today, and I told Mr. Elmore the same thing I'm telling you. I wasn't going to take the case. I didn't

have any intentions of taking it. But since then I've found that, one, there's an issue with Doctor Larson going forward. Secondly, Mr. Wilkins has been seen by a new doctor at the jail, a Doctor Martin who currently as of Sunday has him on Thorazine, which is a totally new level that we're going to now that was unknown to Doctor Larson. I had a chance to speak to him briefly during the recess. Doctor Larson was not aware of this new doctor and—or excuse me, not aware of the new medication. He understood as late as Thursday last week that he's still taking Risperdol. Excuse my butcher that. I'm sure the doctors can correct me.

That plus some other issues, Your Honor, are present which I think may be germane to this Court's determination whether he's competent or not. I will defer to the Court. If the Court is in a position— I'd sure hate to ask Mr. Elmore to come back here again, but if the Court is in a position to allow me to substitute in and then continue the matter, then I will take it and if not then Mr. Wilkins has the able assistance of Mr. Hall.

**THE COURT**:     Mr. Elmore?

**MR. ELMORE**:     Judge, the State's position is that this case originated on September 19, 2007. Defendant was represented by able private counsel until October 8th, 2009, for two years. Then Mr. Griffith withdrew, citing inability to communicate with his client. I think you've heard a little bit about what that might entail today. The public defender was appointed and the case is set for trial March 22nd.

It goes beyond that, Judge. The way the case has proceeded is trial dates have been set then when a trial date was set Mr. Griffith moves to find the defendant incompetent. Then when I come up with these phone calls that change the opinions of the experts that examined the defendant, on the date of the competency hearing in March of '09 Mr. Griffith withdraws his suggestion of incompetency. Then it's set for trial August 31st, 2009. We're rolling along to trial. On about Monday or Tuesday before the trial, Mr. Griffith refiles his suggestion of incompetency. The Judge—instead of just continuing the case, the

Judge has the two psychologists see the defendant. The Judge made some unfortunate remarks, though, about his opinions concerning the defendant's concerted efforts to appear psychiatrically infirm. And so he was recused by Mr. Griffith and the defendant.

And so the trial is put off again. Now we're rolling along for another trial date. Now Mr. Griffith withdraws and cites nothing more than his inability to communicate with his client, which clearly—

**THE COURT**:    Is this currently set for March 22nd?

**MR. ELMORE**:    It's set for March 22nd, Judge.

**THE COURT**:    Okay, then the motion to change counsel is denied.

**MR. ELMORE**:    Thank you.

**MR. ETHERIDGE**:    Thank you, Your Honor.

**MR. HALL**:    Your Honor, I'd like to be heard on one thing. I don't think I'm going to be ready to try this case on March 22nd.

**THE COURT**:    You better get ready, Mr. Hall.

**MR. HALL**:    But if we're—are we going to—depending on how far we're going to go tonight, as well, if we're going to go to 5:00 or if we're going to go later, I mean, we could finish up with Doctor Gilgun and then if Mr. Etheridge came in then they could—if we finished it here, they could finish the hearing at a later date.

**MR. ELMORE**:    Doctor McClaren has come—

**THE COURT**:    I am—

**MR. ELMORE**:    Doctor McClaren has come all the way from—

**THE COURT**:    I am here, ready to proceed. Just because the defendant's family at the last second has said we'd like Mr. Etheridge is not going to be sufficient. This has been going on a long time. I will make a decision today whether he is competent to proceed or not.

**MR. ELMORE**:   Judge, and quite frankly, I mean, I think your ruling as opposed to he's not allowed to substitute should probably be you're not going to continue the trial date.

**THE COURT**:    I'm not continuing.

**MR. ELMORE**:   And if Mr. Etheridge thinks he can get ready in a little more than a month, you know—

**THE COURT**:    That'll be up to him.

**MR. ELMORE**:   —fine, but—

**THE COURT**:    But with regards to the competency, I am hearing it today.

**MR. ETHERIDGE**:    We appreciate your ruling, Your Honor. Have a good evening.

(Doc. 17-2, Ex. E at 107-13) (emphasis added). Etheridge hung up, and the competency hearing proceeded with Hall representing Wilkins. (*Id*. at 113-205). Wilkins waived the attorney-client privilege as to Larson's testimony, and the court heard testimony from Larson and other witnesses.

Wilkins argues that the First DCA's rejection of his claim is contrary to *Chandler v. Fretag*, 348 U.S. 3 (1954). (Doc. 22 at 1-2). In *Chandler*, a criminal

defendant charged with breaking and entering a business and stealing items valued at three dollars waived his right to counsel. Immediately following his waiver, the defendant was notified that he also would be tried as a habitual criminal. The defendant asked for a continuance to obtain counsel to represent him on the habitual criminal accusation, but the trial court denied a continuance. The defendant proceeded to trial on the charges without the assistance of counsel. The Supreme Court held that "a defendant must be given *a reasonable opportunity* to employ and consult with counsel," and that "by denying petitioner *any opportunity whatever* to obtain counsel on the habitual criminal accusation, the trial court deprived him of due process of law as guaranteed by the Fourteenth Amendment." 348 U.S. at 10 (emphasis added).

Wilkins's case is distinguishable from *Chandler* in several significant respects. Wilkins had a reasonable opportunity to employ and consult with counsel of his choice—he had *four months* after Griffith withdrew to retain Etheridge (or another attorney) for the competency hearing. During that time, the competency hearing was continued at least once. Wilkins waited until after the competency hearing was underway to make arrangements to retain Etheridge. Etheridge conditioned his representation on Wilkins obtaining a continuance of the hearing. The trial court was informed of, and considered a number of factors in deciding

whether to grant a continuance: (1) the age and procedural history of the case, including delays of the trial; (2) the history of proceedings on the competency issue; (3) that Wilkins had a 4-month window following Griffith's withdrawal to retain Etheridge; (4) that Wilkins waited until the competency hearing was in progress to make arrangements to retain Etheridge; and (5) Etheridge's contention that Wilkins had just informed him (but chose not to inform Hall prior to the hearing) of Wilkins's new diagnosis and medication. Wilkins had the assistance of Hall for the remainder of the competency hearing. These facts distinguish this case from *Chandler*.

Because neither *Chandler*, nor any other decision of the Supreme Court suggests that the trial court's ruling in this case deprived Wilkins of his right to a fair opportunity to retain counsel of his choice or his right to due process, the First DCA's summary affirmance cannot be contrary to clearly established Supreme Court precedent. *See Dombrowski v. Mingo*, 543 F.3d 1270, 1274 (11th Cir. 2008) ("[W]hen no Supreme Court precedent is on point, we have held that a state court's conclusion cannot be 'contrary to clearly established Federal law as determined by the U.S. Supreme Court.'") (quoting *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003)); *Gill*, 633 F.3d at 1289 (same).

Wilkins's claim also fails under AEDPA's "unreasonable application" standard. Wilkins argues that the First DCA's decision involved an unreasonable

application of *Gonzalez-Lopez*. (Doc. 1 at 26). Within the contours of *Gonzalez-Lopez*, however, a fairminded jurist could conclude that the trial court did not violate Wilkins's Sixth Amendment right to counsel of choice.

*Gonzalez–Lopez* held that a defendant's choice-of-counsel right is violated when his "choice is *wrongfully* denied." 548 U.S. at 150 (emphasis added). It was undisputed in *Gonzalez-Lopez* that the trial court had *erroneously* deprived the defendant of his counsel of choice when it denied preferred-counsel's motions for admission *pro hac vice* based on an erroneous interpretation of a local rule of court procedure. 548 U.S. at 143-44. The Supreme Court emphasized the significance of that fact to the holding of the case:

> To be sure, the right to counsel of choice 'is circumscribed in several important respects.' *Wheat, supra*, at 159, 108 S. Ct. 1692. But the Government does not dispute the Eighth Circuit's conclusion in this case that the District Court erroneously deprived respondent of his counsel of choice.

548 U.S. at 144.

The Court re-emphasized that point later in its opinion: "Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice. . . ." *Id*. at 151. The Court elaborated:

> [T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them. *See Wheat*, 486 U.S., at 159, 108 S. Ct. 1692; *Caplin & Drysdale*, 491 U.S., at 624, 626, 109 S. Ct.

2646. Nor may a defendant insist on representation by a person who is not a member of the bar, or demand that a court honor his waiver of conflict-free representation. *See Wheat*, 486 U.S., at 159–160, 108 S. Ct. 1692. We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, *id.*, at 163–164, 108 S. Ct. 1692, and against the demands of its calendar, *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S. Ct. 1610, 75 L.Ed.2d 610 (1983). The court has, moreover, an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat, supra*, at 160, 108 S. Ct. 1692. *None of these limitations on the right to choose one's counsel is relevant here. This is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel.* However broad a court's discretion may be, the Government has conceded that the District Court here erred when it denied respondent his choice of counsel. Accepting that premise, we hold that the error violated respondent's Sixth Amendment right to counsel of choice and that this violation is not subject to harmless-error analysis.

*Id.* at 151-52 (emphasis added); *see also Williams v. United States*, 523 F. App'x 666, 669 (11th Cir. 2013) ("[N]othing in *Gonzalez–Lopez* denies [trial] courts the authority 'to make scheduling . . . decisions that effectively exclude a defendant's first choice of counsel.'") (quoting *Gonzalez-Lopez* at 152).

A fairminded jurist applying the Supreme Court's holdings (particularly *Wheat*, *Morris* and *Ungar*) to the specific facts of this case could conclude that (1) the trial court did not deprive Wilkins of a reasonable opportunity to retain counsel of choice following Griffith's withdrawal; (2) the trial court did not *wrongfully* deny

Wilkins his preferred counsel at the February 17, 2010, competency hearing; and (3) the trial court did not unconstitutionally deny a continuance.

Supreme Court precedent on the issue of continuances holds:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery v. Alabama*, 308 U.S. 444, 60 S. Ct. 321, 84 L. Ed. 377. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag*, 348 U.S. 3, 75 S. Ct. 1, 99 L. Ed. 4.

*Ungar*, 376 U.S. at 589.

"The Supreme Court's statement in *Ungar*—that 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality'—is a fairly general rule." *Himes v. Sec'y, Fla. Dep't of Corr.*, 690 F. App'x 640, 646 (11th Cir. 2017) (quoting *Ungar*, 376 U.S. at 589). Because *Ungar* announced a general rule, the First DCA had "more leeway" in denying Wilkins's claim. *See Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The trial court's decision to deny a continuance of the competency hearing was a reasoned exercise of its discretion. It also bears noting that Wilkins was represented by his counsel of choice (Etheridge) during the remaining months of his criminal proceeding, including during an additional competency evaluation, trial preparation and plea negotiations.

Wilkins has not shown that the First DCA's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103; *see also  Renico v. Lett*, 559 U.S. 766, 773 (2010) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."). Because fairminded jurists could agree that the trial court's denial of a continuance did not deprive Wilkins of his constitutional right to counsel of choice or due process, Wilkins is not entitled to habeas relief on Ground One.

**Ground Two**          **"Petitioner asks this Court to determine on its own authority and rule he was unconstitutionally denied effective assistance of counsel when counsel failed to protect his 6th Amendment right to Counsel of Choice and his 14th Amendment right to Due Process at the competency hearing which resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence known by the trial judge and**

**an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 5).**

Wilkins claims that appointed counsel Hall was ineffective at the February 17, 2010, competency hearing when Hall failed to object to the trial court's denial of a continuance. (Doc. 1 at 5-6). Wilkins asserts that he exhausted this claim by raising it on direct appeal as "Point 9" and in his Rule 3.850 proceeding as Ground 6. (*Id*.).

The State asserts that this ineffective assistance claim is procedurally defaulted because "the exact claim he make[s] here was not properly raised in the trial court below." (Doc. 17 at 22). The State alternatively argues that the claim is without merit. (*Id*. at 24-25).

### A.    Wilkins Exhausted His Claim that Counsel Was Ineffective for Failing to "Protect his Right to Counsel of Choice"

Wilkins raised this ineffective assistance of counsel claim as Ground 6 of his amended Rule 3.850 motion. (Doc. 17-3, Ex. N at 28-29, 61) (Am. Mot. and Suppl.).[7] The state circuit court denied relief on the merits. (Doc. 17-3, Ex. N at 205-

---

[7] Wilkins did *not* raise this claim as "Point 9" of his direct appeal. Wilkins's "Point 9" claimed this: "The Court Erred By Not Following Procedural Law As Set Forth In Florida Rules of Criminal Procedure 3.210. Et. Seq. In Regards To Appellant's Competency." (Doc. 17-2, Ex. G at 241). That claim is not the same claim as the Sixth Amendment ineffective assistance claim Wilkins raises here. The two claims are separate and distinct for purposes of satisfying AEDPA's exhaustion requirement. *Pietri*, 641 F.3d at 1289; *Walker*, 10 F.3d at 572.

06). The First DCA summarily affirmed. *Wilkins v. State*, 277 So. 3d 50 (Fla. 1st DCA 2017) (Table) (per curiam) (copy at Doc. 17-5, Ex. T). Accordingly, this court should reject the State's procedural default defense.

**B.    Clearly Established Federal Law**

The clearly established federal law governing claims of ineffective assistance of counsel when the defendant has entered a *nolo contendere* plea, is outlined above in the plea standard.

**C.    State Court's Decision**

The state postconviction trial court began its analysis by identifying the legal principles governing Wilkins's ineffective assistance claims:

> As the United States Supreme Court has explained, "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 132 So. Ct. 1376, 1384 (2012). In general, to state a facially sufficient claim of prejudice, a defendant seeking to withdraw his plea on grounds of counsel's ineffectiveness must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty or no contest and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985); Lara v. State, 170 So. 3d 133 (Fla. 5th DCA 2015). In addition, incorrect information from a Defendant's attorney can demonstrate that a Defendant's plea was not voluntarily and knowingly entered. See State v. Yeomans, 172 So. 3d 1006 (Fla. 1st DCA 2015). On the other hand, the Defendant cannot go behind the plea and raise issues that were known when he entered the plea. Gidney v. State, 925 So. 2d 1076 (Fla. 4th DCA 2006).

(Doc. 17-3, Ex. N at 195).

Page 52 of 117

The state circuit court denied relief on this particular claim as follows:

Ground Six

The Defendant claims that his counsel was ineffective for failing to protect Defendant's right to counsel of choice at Defendant's competency hearing. The record conclusively demonstrates the Defendant is not entitled to relief on this claim.

To the extent the Defendant is claiming that this Court erred in denying the Defendant's sixth amendment right to counsel of choice, this claim is procedurally barred. Such a claim of judicial error should have been raised at trial and, if properly preserved, on direct appeal. See generally Robinson v. State, 913 So. 2d 514, 524 n.9 (Fla. 2005); Sands v. U.S., No. 8:13-cv-2570-T-30TGW, 2014 WL 3809170, at *2 (M.D. Fla. Aug. 1, 2014).

Even if the claim was not procedurally barred, it is without merit. "Although a criminal defendant has a Sixth Amendment right to select his own private attorney, the right is circumscribed in several important respects. While the Sixth Amendment affords criminal defendants a presumption in favor of counsel of choice, *where considerations of judicial administration supervene, the presumption in favor of counsel of choice is rebutted and the right must give way*." Foster v. State, 704 So. 2d 169 (Fla. 4th DCA 1997 (internal quotation marks and internal citations omitted, emphasis added). Mr. Etheridge requested a continuance *in the middle of the competency hearing*. Attachment 4, at 67. The court's decision not to continue the competency hearing, in the middle of the hearing itself, was a valid exercise of the Court's discretion predicated on considerations of judicial administration. "When a trial court considers a defendant's request to substitute counsel in the middle of court proceedings, the court must balance an accused's right to counsel of choice with the public's interest in the prompt and efficient administration of justice." Spikes v. Mackie, 541 Fed. Appx. 637 (6th Cir. 2013).

Furthermore, Mr. Etheridge became Defendant's counsel soon after the competency hearing. <u>Attachment 8</u>. The Court did not err in declining to continue the February 17, 2010 competency hearing based on the request to substitute defense counsel in the middle of that hearing.

To the extent the Defendant is claiming Mr. Hall was constitutionally ineffective for not arguing that Mr. Etheridge be allowed to represent the Defendant at the competency hearing, this claim is insufficient. This speculative sort of claim cannot demonstrate the prejudice required under <u>Strickland</u>. <u>See</u> <u>U.S. v. Gonzalez-Lopez</u>, 548 U.S. 140, 150 (2006) ("Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe."); <u>Jones v. State</u>, 845 So. 2d 55, 64 (Fla. 2003) ("Post-conviction relief cannot be based on speculative assertions."). In addition, considering the Court's finding that there was overwhelming evidence that the Defendant's [sic] was malingering, it is difficult to even imagine how a different counsel could have altered the outcome of the competency proceeding. <u>Attachment 4</u>, at 155.

(Doc. 17-3, E. N at 205-06). The First DCA affirmed the lower court's order without an opinion. (Doc. 17-5, Ex. T).

## D.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Wilkins's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018) (holding that where

there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

The state court's rejection of Wilkins's claim was not contrary to clearly established federal law, because the state court utilized the *Strickland* standard. *See, e.g., Jenkins v. Sec'y, Dep't of Corr.*, 520 F. App'x 871, 873 (11th Cir. 2013) ("With regard to the first element of § 2254(d)(1), there is no merit to Jenkins' argument that the state court's decision was contrary to clearly established federal law because the state court utilized the *Strickland* standard.").

The state court's application of the *Strickland* standard—in particular *Strickland*'s prejudice prong—was reasonable. Wilkins's allegations do not establish a substantial likelihood that the result of his criminal proceeding would have been different had Attorney Hall objected to the court's denial of a continuance of the February 17, 2010, competency hearing. Speculation does not suffice. *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."); *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner"

asserting a claim under *Strickland*); *Wilson v. Sec'y, Fla. Dep't of Corr.*, 786 F. App'x 878, 881 (11th Cir. 2019) ("[C]onclusory argument falls short of showing a substantial likelihood of a different result.") (citing *Strickland* and *Richter*).

The state court's rejection of Wilkins's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Wilkins is not entitled to habeas relief on Ground Two.

| | |
|---|---|
| **Ground Three** | **"Petitioner raises a *Pate* claim that trial court's procedures were inadequate to ensure that defendant was competent to stand trial and asks this Court to determine on its own authority and rule that his 14th Amendment right to Due Process was unconstitutionally violated when convicted while incompetent, resulting in a decision based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 7).** |

Wilkins claims that he was deprived of procedural due process when the trial court (1) determined at the February 17, 2010, competency hearing that he was competent to proceed based on "stale" competency evaluations; and (2) "never addressed" Wilkins's current diagnosis and treatment with Thorazine by the doctor at the jail (Dr. Martin). (Doc. 1 at 7).

The parties agree that Wilkins exhausted this claim by presenting it to the state court as "Point 9" of his *pro se* initial brief on direct appeal, and that the First DCA

summarily rejected the claim on the merits in its decision issued January 24, 2012. (Doc. 1 at 7; Doc. 17 at 26); *see also Wilkins v. State*, 90 So. 3d 305 (Fla. 1st DCA 2012) (copy at Doc. 17-2, Ex. M).[8]

The First DCA's decision is subject to § 2254(d)'s deferential standard of review. *See Richter*, 562 U.S. at 99, 100. Wilkins's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter* at 98.

### A.    Clearly Established Federal Law

The clearly established federal law governing this claim is the *Pate* standard outlined above.

---

[8] Wilkins asserts that he also raised this claim in his Rule 3.850 proceeding and that the state court determined that any claim of trial court error was procedurally barred. (Doc. 1 at 7). It is unnecessary to address the postconviction court's procedural ruling, because the relevant decision for purposes of federal habeas review is the First DCA's adjudication of Wilkins's claim on the merits in his direct appeal.

To clarify, though, the law in Florida is that competency claims of trial court error must be raised on direct appeal. *Dougherty v. State*, 149 So. 3d 672, 676 (Fla. 2014); *Thompson v. State*, 88 So. 3d 312, 316 (Fla. 4th DCA 2012) ("In Florida state courts, neither a procedural nor a substantive competency claim of trial court error may be raised in a postconviction motion." (citing *Nelson v. State*, 43 So. 3d 20, 33 (Fla.2010))); *see also Wickham v. State*, 124 So. 3d 841, 861-62 (Fla. 2013); *Bundy v. State*, 538 So. 2d 445, 447 (Fla. 1989).

**B.      Section 2254 Review of State Court's Decision**

Wilkins's competency to proceed was addressed at the February 17, 2010,

competency hearing and at the July 9, 2010, plea hearing. (Doc. 17-2, Ex. E at 44-

205; Doc. 17-1, Ex. C).

At the February 17, 2010, competency hearing, Dr. Gilgun summarized his

opinion as follows:

> I have come to the conclusion the defendant was faking psychiatric
> illness on other occasions I met with him to include our most recent
> occasion. It continues to be my opinion that were he willing to put forth
> more effort he could have answered the competency questions and
> demonstrated an understanding of his legal circumstances. It's my
> opinion the defendant is competent to proceed. He does have sufficient
> present ability to relate to his attorney with a reasonable degree of
> rational understanding if he chooses to do so. He also has a rational as
> well as a factual understanding of the proceedings against him.

(Doc. 17-2, Ex. E at 88; *see also* Doc. 17-1, Ex. B at 173 (Gilgun Report dated

8/31/09, concluding that Wilkins was competent to proceed)).

Dr. McClaren summarized his opinion as follows:

> I believe that he is competent based on the prior evaluation,
> absent some horrible deterioration of his mental condition that I'm not
> aware of.
>
>          . . . .
>
> [T]he truth is I don't know whether or not he really does have a
> legitimate psychiatric history or not, but if he does have a mood

> disorder, some degree of depression, . . . [i]t's grossly exaggerated in
> all my contacts with him.
>
>         . . . .
>
> What I think is the man has very well misled the situation and has gone
> on for a couple of years fabricating symptoms.

(Doc. 17-2, Ex. E at 136-37, 145; *see also* Doc. 17-1, Ex. B at 181-85 (McClaren

Report dated 12/31/08, concluding that Wilkins was competent to proceed); Ex. B

at 228-29 (McClaren Report dated 8/31/09, concluding that Wilkins was competent

to proceed)).

Dr. Larson testified that he interviewed Wilkins on January 19, 2010; that his

assistant saw Wilkins on January 22, 2010; and that Larson interviewed Wilkins

again on February 9, 2010. (Doc. 17-2, Ex. E at 156). Dr. Larson testified that he

used three tests to detect malingering, and that all three tests indicated Wilkins was

malingering. (*Id*. at 159-61). In Larson's view, however, the determination whether

Wilkins was competent to proceed was complicated by the fact that Wilkins was

diagnosed with a psychotic disorder, was being treated with anti-psychotic

medication, Risperdol; and had refused to take his medication the month of

February, 2010. (*Id*. at 161). Larson continued:

> When I saw him the second time [February 9, 2010], he appeared
> worse than he did the first time I saw him in terms of hygiene and mood.
> There was appreciable body odor like there is in many psychiatric

patients. And so I found myself in a bit of a quandary in trying to offer you a recommendation of my ultimate opinion. On the one hand, he presented as clearly malingering, but on the other hand he presented with a history of psychotic symptoms, psychiatric treatment, and he possibly had more defined psychiatric symptoms when I saw him.

Now some psychologists will feel comfortable that if somebody malingers on three malingering tests to make [sic] that he definitely consequently ipso facto they have a defense strategy, and that's to malinger. But we have a group of psychiatric patients who exaggerate their psychiatric symptoms, so that leap sometimes can be in error. And [that] deductive leap is not one that I'm comfortable making when there's a bona fide psychiatric history versus now been identified by two psychiatrists I understand as in need of psychiatric treatment at the jail and is now treated with yet – from what I heard earlier in the courtroom – a different anti-psychotic medication, Thorazine.

So ultimately in my report I basically said there's no doubt that this man is malingering psychiatric symptoms, but I can't rule out the possibility there's not valid psychosis there that's sufficient to undermine his capacity to proceed competently. . . . And so my ultimate recommendation was for the Court to consider the advantage of adjudicating him incompetent to proceed, send him to Florida State Hospital where he can be observed around the clock where they can use a wider range of medications than the formulary that is allowed at the jail. And they can titrate those medications and observe his behavior to see if he responds to various medications over a period of time and get a better picture of what extent the symptoms are either all or partially malingered and what extent he has bona fide legitimate symptoms.

Put another way, essentially this is a defendant who would not cooperate with a competency evaluation and so it's hard for me to offer a comfortable opinion that he's competent when he doesn't cooperate and has a psychiatric history and is being treated for a severe mental disorder.

. . . .

Page 60 of 117

I went ahead and said in my opinion he's not competent to proceed and that he can be restored.

**THE COURT**:    So if I'm hearing you correctly, you're hedging your bet.

**THE WITNESS**:  Yes, ma'am.

(*Id*. at 163-65).

During cross-examination, Dr. Larson testified:

**Q [Prosecutor Elmore]:** You agree that there is no doubt that he is definitely malingering his mental illness.

**A [Dr. Larson]:**    There is no doubt in my mind, Mr. Elmore, that he is definitely exaggerating his symptoms or totally feigning his symptoms.

**Q**:    And so your opinion today that he's incompetent, you know, if he's clear-headed and logical and as the other doctors suggest he understands the adversarial nature of the process and he's just faking it, what is your opinion based on these?

**A**:    Well, that's the rub. He wouldn't cooperate when I tried to ask him questions about who his attorney was or what the charges were, so I was not left with information where I could say with confidence that he had an accurate understanding of the nature of the adversarial process or he had a rational—I should stress rational—I wasn't left with data that would allow me to say to this Court with confidence he has a rational as well as a factual understanding of the proceedings against him. In fact, he told me that he didn't have any charges against him unless it was because he hit an orderly.

I couldn't get him to discuss the nature of the adversarial process. Such simple questions as, what's the role of the Court; what's the role

of the State attorney; what does prosecution mean; what does conviction mean; what's a plea bargain—he had been offered a plea bargain; how's a plea offer work; what's the possible range of penalties; what are you charged with? I couldn't get any responses from any of those things, so I can't—

**THE COURT**:    When you say you couldn't get any responses, what does that mean? He just didn't answer you?

**THE WITNESS [Dr. Larson]**:  I don't know, I don't know.

**THE COURT**:    Everything was, I don't know?

**THE WITNESS**: — before I inadvertently perjure myself. When I asked him who his attorney was he said he didn't know. I asked him why Michael Griffith was no longer his attorney, he said he wasn't his attorney, it was Doctor Griffith. When I asked him what he was charged with he said, I hit an orderly but I didn't. And then when it came to the Judge and the State attorney and so forth he said I don't know or he remained mute.

**THE COURT**:    Now the number of people that you have seen and the number of people that you have found incompetent to proceed, when you ask those questions, what percentage do you think of people that you have found incompetent to proceed have answered questions in a similar manner?

**THE WITNESS**: In a mentally ill population—I'm going to separate populations here. In a mentally retarded population, that's not uncommon. In a mentally ill population, it's very rare.

**THE COURT**:    Very rare.

**THE WITNESS**:  Very or extremely rare.

**THE COURT**:     Thank you. And if you found him incompetent it would be in a mentally ill capacity as opposed to mental retardation.

**THE WITNESS**: Absolutely.

**THE COURT**:     You did not see anything to indicate mental retardation?

**THE WITNESS**: No.

(*Id*. at 170-73).

The State presented audio recordings of telephone calls Wilkins made from the jail to a friend (Mr. Dale) during the period September 27, 2007, to March 19, 2009. (*Id*. at 149-155, 182-98). The State played three recordings in particular, dated September 1, 2008; December 30, 2008; and January 22, 2009. Those dates were significant because they coincided with Wilkins's competency interviews with Gilgun and McClaren on September 19, 2008; December 30, 2008; and January 23, 2009. (Doc. 17-2, Ex. E at 60-74 (Gilgun testimony); Doc. 17-1, Ex. B at 178-80 (Gilgun report); Doc. 17-2, Ex. E at 130-31 (McClaren testimony); Doc. 17-1, Ex. B at 181-83 (McClaren report)). The evidence juxtaposed Wilkins's complete clear-headedness during his conversations with Dale, with Wilkins's wholly disoriented responses to questions posed by Gilgun and McClaren.

For example, in Wilkins's September 1, 2008, conversation with Dale, Wilkins ("Speaker One") discussed his financial accounts; recent activity in the financial markets; and executing a power of attorney (notarized of course) so that Dale could conduct financial transactions for him. (Doc. 17-2, Ex. E at 182-85). In contrast, during an interview with Gilgun two weeks later, Wilkins "appeared quite psychiatrically impaired or disturbed"; "had severe difficulty organizing his thoughts, participating in the interview"; and was "totally disoriented to time, place and circumstance." (Doc. 17-1, Ex. B at 178-79 (Gilgun report); Doc. 17-2, Ex. E at 60 (Gilgun testimony)).

In the December 30, 2008, phone call to Dale, Wilkins ("Speaker One") gave Dale detailed instructions about disconnecting his phone and obtaining two magazine subscriptions for him, and even walked Dale through a detailed internet search that would find the best deal. (Doc. 17-2, Ex. E at 189-93). In contrast, that same day Wilkins scored a 61 on an IQ test administered by McClaren, and the result of his MMPI was consistent with an invalid profile. (Doc. 17-2, Ex. E at 130-31 (McClaren testimony); Doc. 17-1, Ex. B at 181 (McClaren report)).

During the January 22, 2009, call to Dale on January 22, 2009, Wilkins ("Speaker One") again discussed his financial accounts, his phone account, and magazine subscriptions in a coherent, organized and detailed manner, wholly

oriented as to time. (Doc. 17-2, Ex. E at 194-98). When Wilkins met with Dr. Gilgun the following day, Wilkins's responses to Gilgun's questions were so disoriented that Gilgun described Wilkins as having "decompensated to a psychotic state." (*Id.* at 74).

The final witness was Mr. Dale, who confirmed that he was the recipient of the phone calls. (*Id.* at 178-182). Dale testified that Wilkins never said anything bizarre during their phone conversations. (*Id.* at 81-82).

After hearing all the evidence, the trial court concluded:

> I do find that he's competent to proceed. I think the evidence is overwhelming that he's been malingering and the question becomes now whether he wants to continue the charade or whether he wants to help his counsel.

(*Id.* at 198-204). The case was scheduled for trial.

On March 17, 2010, Wilkins retained Etheridge, and Etheridge appeared on Wilkins's behalf. (Doc. 17-1, Ex. A at 21 (docket sheet)). Etheridge moved to set bond. A bond hearing was set for June 2, 2010. (*Id.* at 22).

At the June 2, 2010, hearing, Etheridge filed a Motion for Rehearing on Defendant's Competence to Proceed, seeking another competency hearing. (Doc. 17-1, Ex. A at 119-120). In support, the motion alleged that (1) at the prior competency hearing, the court did not accept any testimony or mental health records

by Dr. Martin; (2) Dr. Martin determined that Wilkins "suffered from mental illness and prescribed Thorazine on a daily basis to address that mental illness;" and (3) the defense anticipated that an additional psychologist would be examining Wilkins to evaluate his competence to stand trial and his sanity at the time of the crimes. (*Id*. at 119). The court denied rehearing. (*Id*. at 22).

Etheridge retained Dr. Brett Turner to evaluate Wilkins's competency. (Doc. 17-1, Ex. B at 199). Dr. Turner conducted a clinical interview of Wilkins on June 11, 2010, and considered a number of records including the evaluations of Drs. Gilgun, Larson and McClaren. (*Id*.). Turner also considered Wilkins's current diagnosis provided in the jail infirmary records. (*Id*. at 201). Turner determined that Wilkins was competent to proceed. (*Id*. at 204-05).

Wilkins's change of plea hearing was held on July 9, 2010. (Doc. 17-1, Ex. C). The presiding judge was the same judge who presided over the February 17, 2010, competency hearing. Attorney Etheridge advised the court of Dr. Turner's conclusion. Etheridge also informed the court that he "was well-satisfied" that Wilkins was competent to proceed. (*Id*. at 235). Etheridge stated that in his dealings and conversations with Wilkins, Wilkins was coherent, understood the nature of the proceedings against him, "underst[ood] exactly what's going on today, and was entering the plea because he felt it was in his best interest. (*Id*. at 235-36).

Page 66 of 117

Wilkins did not act irrational or disoriented at the plea hearing. Wilkins engaged in meaningful and coherent colloquies with both the prosecutor and the trial court. Wilkins answered a series of questions about himself, including his full name, age, date of birth, place of birth, place of residence prior to arrest, education, the institutions where he received high school and college degrees, and the nature of his college degree. (*Id*. at 235-38). After establishing this baseline, the prosecutor inquired further:

> **MR. PARKER** [Prosecutor]:   Do you know where you are right now?
>
> **THE DEFEDANT**:       Yes.
>
> **MR. PARKER**:   And where is that?
>
> **THE DEFENDANT**:       In chambers.
>
> **MR. PARKER**:   Do you know what building this is?
>
> **THE DEFENDANT**:       In the court house.
>
> **MR. PARKER**:   Do you know what county you're in?
>
> **THE DEFENDANT**:     Santa Rosa.
>
> **MR. PARKER**:   And this is what city?
>
> **THE DEFENDANT**:     Milton.
>
> **MR. PARKER**:   You understand why you're here today?

**THE DEFENDANT**:      Yes.

**MR. PARKER**:      Okay. What is your understanding of that, Mr. Wilkins?

**THE DEFENDANT**:      To prevent further course of action – to settle the matter.

**MR. PARKER**:      So what you're doing today would resolve this case?

**THE DEENDANT**:      If you say so. I believe so; yes, sir.

**MR. PARKER**:      And that is your understanding of it?

**THE DEFENDANT**:      Yes.

**MR. PARKER**:      Now, do you know what the charges are that have been brought against you?

**THE DEFENDANT**:      Yes, sir.

**MR. PARKER**:      And has your attorney gone over those charges with you?

**THE DEFENDANT**:      Yes, sir.

**MR. PARKER**:      Who is your attorney?

**THE DEFENDANT**:      Mr. Etheridge.

**MR. PARKER**:      Randy Etheridge represents you in this case?

**THE DEFENDANT**:      Yes, sir.

**MR. PARKER**:      And have you had an opportunity to discuss the case with him?

**THE DEFENDANT**:     Yes.

**MR. PARKER**:     Can you describe to the court what his function is as you understand it?

**THE DFENDANT**:     To help me resolve the issue.

**MR. PARKER**:     All right. And in what way is that done? What does he do to help you resolve this issue?

**THE DEFENDANT**:     He counsels me.

**MR. PARKER**:     Okay, and has he provided advice to you as it concerns this case?

**THE DEFENDANT**:     He's showed me the facts and consequences of either trying to settle or go forward.

**MR. PARKER**:     Have you had ample opportunity to talk to him about the case?

**THE DEFENDANT**:     Yes.

**MR. PARKER**:     All right. Is there anything that you have asked him to do with regard to the case that he has not done?

**THE DEFENDANT**:     No.

**MR. PARKER**:     Are you taking any type of medication right now?

**THE DEFENDANT**:     Yes, sir.

**MR. PARKER**:     Okay. Can you tell the court what mediation you're taking?

**THE DEFENDANT**:    Thorazine, Sinequan, Baclofen. And they vary from time to time. Sometimes they give me diterpene medication Tylenol and ibuprofen.

**MR. PARKER**:    Let me ask you this, Mr. Wilkins, the medications that you've been given that you are taking right now, what affect [sic] do they have on you?

**THE DEFENDANT**:    They help with my mental issues and physical issues.

**MR. PARKER**:    All right. Do they in any way interfere with you being able to understand what is going on today?

**THE DEFENDANT**:    Only when they give me the wrong medications. Sometimes they give me wrong medications and that's hindered me, but I believe I am on the right medication today.

**MR. PARKER**:    All right. Do you have any reason to believe that you have been given a wrong medication prior to coming in to this court today?

**THE DEFENDANT**:    Not today.

**MR. PAKER**:    Up to this point, have you understood everything that has gone on so far in court today?

**THE DEFENDANT**:    Today, yes, sir.

**MR. PARKER**:    Is your mind clear at this time?

**THE DEFENDANT**:    I believe so.

(*Id*. at 238-42).

Page 70 of 117

The prosecutor went through the plea form with Wilkins, including each constitutional right Wilkins was waiving by entering his plea. (*Id*. at 242-45). Wilkins affirmed that he understood the nature of each right and that he was waiving that right. (*Id*.). Wilkins also affirmed that he understood he was "giving up any defense of insanity" and that he was also giving up his motion to suppress evidence recovered from the crime scene. (*Id*. at 244-45). After additional questioning by the prosecutor about Wilkins's understanding of the plea agreement, the trial judge conducted her own colloquy of Wilkins concerning his understanding of the proceedings, including the charges against him, the terms of the plea agreement, and the maximum sentences the court could impose. (*Id*. at 248-51). Wilkins provided reasoned responses to the judge's questions. (*Id*.).

On this record, a fairminded jurist could conclude that the objective facts known to the trial court did not raise a bona fide doubt about Wilkins's competence to enter his *nolo contendere* plea. *See Pate*, 383 U.S. at 385; *Drope*, 420 U.S. at 180. The state court's rejection of Wilkins's procedural competency claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Wilkins is not entitled to habeas relief on Ground Three.[9]

---

[9] To the extent Wilkins claims that the trial court violated state-law requirements concerning the timing of competency hearings and other requirements exclusive to

| | |
|---|---|
| **Ground Four** | **"Petitioner raises a _substantive incompetency_ claim that his 14th Amendment Due Process rights were unconstitutionally violated when he was tried and convicted while incompetent and asks this Court to determine on its own authority and rule that this was the result of a decision that was based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 8).** |
| **Ground Six** | **"Petitioner asks this Court to determine on its own authority and rule that defendant's plea was involuntary, violating his 14th amendment right to Due Process, which resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 11).** |
| **Ground Seven** | **"Petitioner asks this Court to determine on its own authority and rule that defendant was unconstitutionally denied effective assistance of counsel when counsel failed to protect his constitutional right to trial and coerced him into entering into an involuntary plea, resulting in a decision that was based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable** |

---

Florida law (but not constitutionally mandated), his claim provides no basis for federal relief. Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); _Swartwout v. Cooke_, 562 U.S. 216, 219 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); _Estelle v. McGuire_, 502 U.S. 62, 67-68 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief; "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

**application of federal law as determined by the Supreme Court." (Doc. 1 at 12).**

These three claims are discussed together, because Wilkins presented them as one claim in his state postconviction proceeding. In Ground Four, Wilkins claims he was not competent to enter his *nolo contendere* plea on July 9, 2010. (Doc. 1 at 8-9). In support, Wilkins identifies this information from the record: (1) on August 27, 2009, Wilkins rocked back and forth during the "docket day" proceeding held before Judge Santurri (the original judge assigned to Wilkins's case); (2) on September 30, 2009, Attorney Griffith moved to withdraw as counsel citing Wilkins's lack of cooperation and inability to assist in his defense; (3) at the February 17, 2010, competency hearing, Attorney Hall affirmed that it was difficult to communicate with Wilkins; (4) statements Dr. Gilgun made in his competency evaluation and during his testimony at the February 17, 2010, competency hearing; (5) statements Dr. McClaren made in his competency evaluation and during his testimony at the February 17, 2010, competency hearing; (6) Dr. Larson's conclusion that Wilkins was incompetent to proceed; (7) statements Dr. Turner made in his July 8, 2010, competency evaluation; (8) the fact that the record contains no evidence from Wilkins's jail psychiatrist concerning the effect of Wilkins's medication on his ability to understand the plea proceeding. (Doc. 1 at 8-9).

In Ground Six, Wilkins claims that his plea was involuntary because (1) he "did not have a full understanding of the charges, or knowledge of the consequences of the plea;" and (2) Mr. Etheridge "surprised him while sedated and convinced him that he would be 'going home'" if he entered the plea. (Doc. 1 at 11).

In Ground Seven, Wilkins repeats his assertion that Etheridge "surprised him while sedated and convinced him that he would be 'going home' the very day he accepted the no contest plea," and that Wilkins "truly believed he would be going home under heavy probation according to promises made by his attorney." (Doc. 1 at 12).

The parties agree that Wilkins exhausted these claims by presenting them in his Rule 3.850 proceeding. (Doc. 1 at 9, 11, 12; Doc. 17 at 30, 40, 42).

**A.     Clearly Established Federal Law**

The clearly established due process standards for competency and guilty pleas are outlined above.

**B.     State Court's Decision**

Wilkins presented these claims to the state court as Ground 4 of his amended Rule 3.850 motion. (Doc. 17-3, Ex. N at 24-27, 60-61). The state circuit court held an evidentiary hearing on this claim, (Doc. 17-5, Ex. Q at 2-115), and denied relief as follows:

Page 74 of 117

The Defendant claims that his plea was involuntary. <u>See</u> Fla. R. Crim. P. 3.850(a)(5). This claim is comprised of three sub-parts which the Court will address in turn.

Ground 4(a)

The Defendant asserts that his plea [was] involuntary because he entered it "while under the influence of psychoactive medication rendering it involuntary." This claim is refuted by the record. As the First District Court of Appeal has instructed:

> [W]here the facts show that (1) a trial court sufficiently inquired into the appellant's use of medication and asked specific questions about the medication's [e]ffect on the defendant, and (2) the defendant appeared lucid during the plea colloquy, the defendant's affirmations that his medication did not affect the knowing and voluntary nature of his plea will refute a claim of ineffective assistance of counsel for failure to object to the plea's entry.

<u>Davis v. State</u>, 938 So. 2d 555, 557 (Fla. 1st DCA 2006).

That is precisely the case here. Prior to the Court accepting the Defendant's plea, the prosecutor conducted a colloquy with the Defendant while the Defendant was under oath.

| | |
|---|---|
| Mr. Parker: | Are you taking any type of medication right now? |
| The Defendant: | Yes, sir. |
| Mr. Parker: | Okay. Can you tell the court what medication you're taking? |
| The Defendant: | Thorazine, Sinequan, Baclofen. And they vary from time to time. Sometimes they give me diterpene[FN4] medication Tylenol and ibuprofen. |

Page 75 of 117

FN4  Diterpene is a medical term referring to a specific class of terpenes. http://www.merriam-webster.com/medical/diterpene. The Court would note that the Defendant has a bachelor's degree in Cellular Molecular biology. <u>Attachment 1</u>, at 8.

| | |
|---|---|
| Mr. Parker: | Let me ask you this, Mr. Wilkins, the medications that you've been given that you are taking right now, what affect [sic] do they have on you? |
| The Defendant: | They help with my mental issues and physical issues. |
| Mr. Parker: | All right. Do they in any way interfere with you being able to understand what is going on today? |
| The Defendant: | Only when they give me the wrong medications. Sometimes they give me wrong medications and that's hindered me, but I believe I am on the right medication today. |
| Mr. Parker: | All right. Do you have any reason to believe that you have been given a wrong medication prior to coming in to this court today? |
| The Defendant: | Not today. |
| Mr. Parker: | Up to this point, have you understood everything that has gone on so far in court today? |
| The Defendant: | Today, yes, sir. |
| Mr. Parker: | Is your mind clear at this time? |
| The Defendant: | I believe so. |

<u>Attachment 1</u>, at 11-12.

Ground 4(b)

Next, the defendant argues that his plea was involuntary because he was not competent when he entered his plea. This claim is refuted by the record.

On February 17, 2010, well before the Defendant entered his plea, the Court found, after a lengthy hearing, that the Defendant was competent to proceed. Attachment 4. The Court found that the evidence was "overwhelming" that the Defendant had been malingering. Id., at 155.

In addition, as the Court described in addressing Defendant's "Ground Three," the Defendant was examined by Dr. Brett Turner shortly before his plea and Dr. Turner found that the Defendant was competent to proceed. Attachment 7. Thus, the Defendant was repeatedly found to be competent to proceed by experts and the Court's prior finding that the Defendant was legally competent was still in effect when the Defendant entered his plea. There is no reasonable probability that the Defendant was incompetent when he entered his plea.

Ground 4(c)

On this ground, the Defendant alleges that he was "coerced by counsel, Randall Etheridge, into entering into an involuntary plea." The Defendant claims that his trial counsel promised Defendant could "go home if he accepted a plea." Motion, at page 5.

The record shows that the Defendant's counsel stated on the record, "What we are contemplating, Your Honor, is a straight up plea to the court. . . ." Attachment 1, at 3. Counsel further explained, "Your Honor obviously would have a final say as to sentencing. The State can argue for what they – whatever they want for the maximum. . . ." Id., at 4. After the Defendant was placed under oath, the Defendant agreed that his attorney went over the rights that the Defendant was waiving by entering the plea. See Id., at 12-16. The Defendant was asked by the

prosecutor, "Do you understand that the state in this case will be asking the court to impose a life sentence? That is the maximum possible sentence in this case. Do you understand that?" Under oath, the Defendant replied, "Yes, sir." Id., at 17. The prosecutor asked the Defendant, "Do you understand that it's within the sound discretion of the court what she feels an appropriate sentence may be in this case?" Id. Again, the Defendant stated under oath that he understood. Further, the Court stated to the Defendant,". . .I cannot sentence you to anything less than ten years. *So your sentencing would be between ten years and the rest of your life. Do you understand that?*" The Defendant answered, under oath, "Yes, Ma'am." Attachment 1, at 21 (emphasis added).

As the Fourth District Court of Appeal has explained, "[a] plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences." Scheele v. State, 952 So. 2d 782, 785 (Fla. 4th DCA 2007). The Florida Supreme Court has stated that "[a] defendant who is informed by the court during the plea colloquy that he may have to serve every day of a ten-year sentence could hardly reasonably rely on counsel's advice to the contrary." State v. Leroux, 689 So. 2d 235 (Fla. 1996). Similarly, a Defendant who is repeatedly informed during the plea hearing that the sentencing decision is up [to] the Court, and Defendant could be sentenced to life in prison, cannot reasonably rely on any statement from counsel to the contrary.

Thus, the record conclusively shows that when the Defendant entered his plea he was informed that he could be sentenced to up [to] life in state prison. Even if the Defendant's counsel did misadvise Defendant that he would be allowed to "go home" if he entered a plea, any prejudice was cured by the Court during the plea colloquy and did not affect the voluntariness of Defendant's nolo contendere plea. See Alfred v. State, 998 So. 2d 1197 (Fla. 4th DCA 2009). The record demonstrates that the Defendant's plea agreement clearly contemplated that a life sentence [w]as a possible outcome of the plea. The Defendant's written plea agreement clearly reflects an

acknowledgment that his attorney "has not compelled or induced [him] to enter into this Sentence Recommendation by any force, duress, threats, pressure *or promises*." Attachment 2 (emphasis added), see Russ v. State, 937 So. 2d 1199 (Fla. 1st DCA 2006); Bluntson v. State, 98 So. 3d 626 (Fla. 1st DCA 2012).

The Defendant claims that he was instructed to politely answer "Yes," to all the questions the Court asked during the plea. However, the Defendant cannot go behind his sworn assertions in a plea colloquy. Ezer v. State, 10 So. 3d 1175 (Fla. 4th DCA 2009). "[A] defendant should be estopped to receive an evidentiary hearing on a postconviction claim when the basis of the claim is that he lied under oath at the relevant hearing." Polk v. State, 56 So. 3d 804, 808 (Fla. 2d DCA 2011).

In addition, the Court finds the Defendant is not credible regarding his allegation that Mr. Etheridge advised him that he would "go home" if he entered his plea. When pressed, the Defendant could not give a clear or consistent answer as to what Mr. Etheridge promised as to sentencing. The Defendant's family members all consistently testified that Mr. Etheridge said the Defendant would get "time served" followed by 10 years of probation, but that is not what the Defendant himself alleged in his sworn post-conviction motion. Specifically, Defendant alleged under oath that trial counsel stated, "if you plea now, I can get you a 30 year suspended sentence with 10 to 20 years probation. You will go home." Motion, at 6. Yet, the Defendant, in his motion to withdraw plea, alleged that Mr. Etheridge advised that Defendant would receive a sentence of ten years o[r] less. On the other hand, in the Defendant's letter to Judge Goodman prior to sentencing, the Defendant himself characterized his chances of going home as "remote." Attachment 9, at 5. It is difficult to believe that Mr. Etheridge advised the Defendant that he would "go home" if Defendant was indicating to Judge Goodman that his chances of going home were "remote."

The Court finds Mr. Etheridge's testimony to be credible. The Court is persuaded that Mr. Etheridge advised the Defendant that he

*hoped* for a ten year sentence and that he did not *expect* a life sentence to be imposed. However, the Defendant was well aware that a life sentence was a possibility when he entered his plea.

(Doc. 17-3, Ex. N at 200-04). The First DCA affirmed without an opinion. (Doc. 17-5, Ex. T).

## C.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Wilkins's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *See Wilson*, 138 S. Ct. at 1192.

This court defers to the state court's factual findings, because they are amply supported by the record and because Wilkins has not rebutted them with clear and convincing evidence to the contrary. This deference extends to the state court's determination that Etheridge's evidentiary hearing testimony was credible and Wilkins's testimony was not credible. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been

Page 80 of 117

observed by the state trial court, but not by them.'" *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)).

Based on the state court's findings of fact and this court's review of the entire record, fairminded jurists can concur in the state court's conclusion that Wilkins was competent to enter his *nolo contendere* plea; that Wilkins's plea was entered knowingly and voluntarily; and that Wilkins's plea was not "coerced" by a promise from Etheridge that Wilkins would "go home" if he entered the plea.

The state court's rejection of Wilkins's claims was consistent with clearly established federal law and was based on a reasonable determination of the facts. Wilkins is not entitled to habeas relief on Ground 4, Ground 6, or Ground 7.

**Ground Five**          **"The petitioner asks this Court to rule that defendant was denied effective assistance of counsel when counsel stipulated to defendant's competence and failed to ensure the trial court hole [sic] a second competency hearing, resulting in a conviction while incompetent, in violation of petitioner's 6th and 14th Amendment rights, resulting in a decision that was based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable**

**application of federal law as determined by the Supreme Court." (Doc. 1 at 10).**

Wilkins claims that Etheridge was ineffective "when he stipulated to defendant's competence rather than ensuring that trial court determine competence as law requires." (Doc. 1 at 10). Wilkins asserts that he exhausted this claim by presenting it as "Point 6" of his direct appeal, and as "Grounds 3, 4, 5 and 11" of his amended Rule 3.850 motion. (*Id*.).

The State asserts a procedural default defense. (Doc. 17 at 34-35). The State argues that although Wilkins raised similar claims, he never presented the state court with this particular claim of ineffective assistance of counsel.

This court need not resolve the procedural default issue, because Wilkins's claim fails on the merits on *de novo* review. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

The record establishes the nature and extent of Etheridge's stipulation at the plea hearing. The plea hearing transcript reads, in relevant part:

> **MR. PARKER** [Prosecutor]: Judge, before the State is willing to agree to dismiss Count 2, there was previously an evaluation done by Dr. Bret[t] Turner who did a psychological evaluation of the defendant and the State would request that those results be disclosed to

the court for your review prior to us agreeing to dismiss that count and it would address some of the issues that have been dealt with previously in this case concerning his competency, and I believe, certainly the court needs to be apprised of that status today before accepting the plea.

      **MR. ETHERIDGE**:    Your Honor, we concur on that recommendation by the State, and quite frankly, that's why we're here on the 11th hour. Dr. Turner, he examined my client last week and I want to protect myself and also Mr. Wilkins' interest. His father or grandfather passed away [s]o we didn't [get] the report in our hands until yesterday, at which time I went and talked to Mr. Wilkins, and in that particular report, it indicates that he finds him competent to proceed.

      He does suggest any further testing be done at the Florida State Hospital, and he was basically very convinced in his evaluation that, indeed, Mr. Wilkins is competent to proceed, and as an officer of the court it is my assurance to the court that in my dealings and speaking with Mr. Wilkins, he's coherent and understands the nature of the charges, and together with the other factor that Your Honor went into great detail in that previous hearing, and I am well-satisfied that he's competent to proceed, and as I said, Your Honor, he's entering this plea because he feels it's in his best interest, and he is coherent and understands exactly what's going on today, but once again, I'll defer to the court and Mr. Parker to make the proper inquiry, but we have agreed to stipulate to that being placed in the record, Your Honor.

(Doc. 17-1, Ex. C at 234-36). The prosecutor then supplied the court with a copy of

Dr. Turner's evaluation. (*Id*. at 236).

      Etheridge did not stipulate to a finding of competency. Rather, Etheridge

stipulated to *Dr. Turner's competency evaluation being entered into the record* to

enable *the court* to determine whether there was a bona fide doubt about Wilkins's

competence to proceed in light of: (1) Turner's report; (2) the evidence from the February 17, 2010, competency hearing; (3) Etheridge's representations concerning Wilkins's present ability to consult with him and understand the proceedings against him; and (4) the court's own observations of Wilkins and evaluation of responses to questions posed by the prosecutor and the court itself.

The stipulation Etheridge made does not undermine the validity of Wilkins's *nolo contendere* plea. Wilkins is not entitled to habeas relief on Ground Five.

**Ground Eight**    **"Petitioner asks this Court to determine on its own authority and rule that the trial court erred when it denied defendant's *Rule 3.170(l)* motion to withdraw plea as a nullity without appointing conflict-free counsel, violating his 6th and 14th Amendment right to Due Process resulting in a decision based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 13).**

Wilkins claims that the trial court violated his constitutional right to assistance of counsel when the court struck, as a nullity, his *pro se* motion to withdraw plea instead of appointing conflict-free counsel to represent him. Wilkins explains:

Petitioner contacted counsel to withdraw his plea after sentencing because it did not conform to counsel's guarantee. Counsel never responded. Petitioner filed a timely *pro se 3.170(l)* on September 25, 2010 under the exception rule which contained allegations that gave rise to an adversarial relationship where counsel misadvised him, made affirmative misrepresentations regarding the plea, and coerced him into entering the plea. It was ruled a nullity stating defendant was

represented on **October 28, 2010**. Counsel filed motion to withdraw and notice of appeal (<u>transferring jurisdiction to the DCA</u>) **on October 13, 2010** (R 437) with its order (R 438). Petitioner asserts he was completely deprived representation by counsel at this critical stage due to the fact that the trial court did not appoint conflict-free counsel once defendant availed himself of the *3.170(l)* process.

(*Id*. at 13-14).

The following brief procedural history of this claim is helpful for putting Wilkins's allegations in context. Wilkins prepared a *pro se* motion to withdraw plea and certificate of service on September 25, 2010, but did not sign or mail the motion at that time. (Doc. 17-4, Ex. N at 37-42). On October 13, 2010, retained counsel Etheridge moved to withdraw as counsel and requested that the court appoint counsel to represent Wilkins. (Doc. 17-1, Ex. A at 155). On October 15, 2010, the trial court allowed Etheridge to withdraw and appointed the Office of the Public Defender to represent Wilkins. (*Id*. at 166). On October 23, 2010, Wilkins mailed his *pro se* motion to withdraw plea to the Santa Rosa County Clerk of Court. (Doc. 17-4, Ex. N at 42). The clerk of court filed the motion on October 26, 2010. (*Id*. at 37; *see also* Doc. 17-1, Ex. A at 24 (docket sheet)). On October 28, 2010, the trial court struck Wilkins's *pro se* motion as a nullity. (Doc. 17-2, Ex. E at 26-27). The court explained:

> THIS MATTER is before the Court on a *pro se* Motion to Withdraw Plea filed pursuant to Florida Rule of Criminal Procedure

3.170(*l*) with a certificate of service dated September 25, 2010, and bearing a date stamp of October 26, 2010. A defendant has no right to partially represent himself and, at the same time, be partially represented by counsel.FN1 *Logan v. State*, 846 So. 2d 472 (Fla. 2003) (quoting *Sheppard v. State*, 391 So. 2d 346 (Fla. 5th DCA 1980)). Defendant was represented by Randall J. Etheridge, Esquire, at sentencing on September 23, 2010. A notice of appeal was filed on October 13, 2010, by counsel, Randall J. Etheridge. Subsequently, the Court appointed the Office of the Public Defender on October 15, 2010, to represent Defendant. A review of the case and the progress docket indicates counsel has not been discharged. The Court finds Defendant was represented by counsel when he filed his motion and thus, treats the document as a nullity.

> FN1   The Court notes Defendant's motion does not contain any allegations which give rise to an adversarial relationship with counsel.

(Doc. 17-2, Ex. E at 25-26).

Wilkins asserts that he exhausted this claim by presenting it to the state court as "Point 9" of his direct appeal, as "Ground 6" of his amended Rule 3.850 motion, and in a letter to the postconviction trial court dated December 5, 2015. (Doc. 1 at 14).

The States asserts a procedural default defense, arguing that Wilkins never presented this Sixth Amendment claim to the state courts. (Doc. 17 at 47-53).

### A.   Wilkins Procedurally Defaulted His Sixth Amendment Claim

### 1.   *Wilkins's Direct Appeal Brief Did Not Present A Constitutional Challenge To the Trial Court's Striking of His Pro Se Motion to Withdraw Plea*

Page 86 of 117

Wilkins did *not* raise this claim as "Point 9" of his direct appeal brief. Wilkins's "Point 9" claimed this: "The Court Erred By Not Following Procedural Law As Set Forth In Florida Rules of Criminal Procedure 3.210. Et. Seq. In Regards To Appellant's Competency." (Doc. 17-2, Ex. G at 241). That is not the same claim Wilkins raises here concerning the striking of his motion to withdraw plea. His present claim relies on a different factual and legal basis.

In an abundance of caution, the undersigned has reviewed all of the claims Wilkins presented on direct appeal. (Doc. 17-2, Ex. G). Wilkins did not claim that he was deprived of his Sixth Amendment right to counsel when the trial court struck his motion to withdraw plea. The most similar claim, "Point 2," claimed that the trial court violated *state law* when it struck his motion. (Doc. 17-2, Ex. G at 231-32). Wilkins claimed:

> The Trial Court Erred In Its Order Striking Appellant's Facially Sufficient And Timely Pro Se Motion To Withdraw Plea Filed Pursuant To Florida Rules Of Criminal Procedure, 3.170(L) Without Holding An Evidentiary Hearing, therein Prejudicing The Appellant And Presenting A Manifest Injustice.

(*Id*. at 231). Wilkins argued that the trial court violated the specific *Sheppard* procedure when it struck his *pro se* motion as a nullity. *See Sheppard v. State*, 17 So. 3d 275 (Fla. 2009). In *Sheppard*, the Florida Supreme Court "outline[d] the

Page 87 of 117

procedure trial courts should follow when a represented defendant files a pro se rule 3.170(*l*) motion based on allegations giving rise to an adversarial relationship such as counsel's misadvice, misrepresentation, or coercion that led to the entry of the plea." *Id*. at 286-87.

Wilkins's direct appeal brief did not argue that the striking of his motion violated his Sixth Amendment right to counsel, nor did he identify any federal law or federal standard applicable to his claim. Because Wilkins did not fairly present a Sixth Amendment claim to the First DCA, his present claim is unexhausted and now procedurally defaulted. *See, e.g., French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270-71 (11th Cir. 2015) (holding that petitioner did not fairly present his Sixth Amendment Confrontation Clause claim to the state court in his direct appeal; petitioner's appellate brief cited only state law and discussed Georgia's specific procedure for admitting evidence of prior false allegations; petitioner's bare mention of the word "confrontation" was insufficient).

### 2.    *Wilkins's Postconviction Pleadings Did Not Present A Constitutional Challenge to the Trial Court's Striking of His Pro Se Motion to Withdraw Plea*

Wilkins also asserts that he exhausted his Sixth Amendment claim by raising it in "Ground 6" of his amended Rule 3.850 motion. Ground 6 of Wilkins's amended Rule 3.850 motion claimed that *trial counsel Sam Hall was ineffective for failing to*

*protect Wilkin's Sixth Amendment right to counsel of choice at the February 17, 2010, competency hearing.* (Doc. 17-3, Ex. N at 28). That claim is not the same claim Wilkins raises here regarding the striking of his *pro se* motion to withdraw plea.

The same is true of Wilkins's December 5, 2015, letter to the postconviction trial court. In that letter, Wilkins claimed that *trial counsel Etheridge was ineffective* for failing to file—or at least adopt—Wilkins's motion to withdraw plea. (Doc. 17-3, Ex. N at 165-70). Wilkins's present claim that *the trial court deprived him of his constitutional right to counsel* by striking his *pro se* motion to withdraw plea is not the same claim as a Sixth Amendment ineffective assistance of trial counsel claim for counsel's failure to adopt the motion. The two are separate and distinct for purposes of satisfying AEDPA's exhaustion requirement. *Pietri*, 641 F.3d at 1289; *Lefroy*, 421 F.3d at 1260; *Walker*, 10 F.3d at 1572. Wilkins recognizes that they are separate and distinct claims, because he has raised, as Ground Nine of his federal habeas petition, a separate claim that Etheridge was ineffective for failing to move to withdraw the plea. (*See* Doc. 1 at 14-15).

For the foregoing reasons, this court concludes that Wilkins's Sixth Amendment challenge to the trial court's order striking his motion to withdraw plea is procedurally defaulted.

**B.    Wilkins Fails to Establish Cause for His Procedural Default**

Wilkins argues that his procedural default is excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). (*See* Doc. 22 at 4). The *Martinez* rule explicitly relates to excusing a procedural default of only one type of claim—an ineffective assistance of trial counsel claim. *Id*. at 17. By its very terms, *Martinez* does not apply to a claim of trial court error.

In *Coleman*, the Supreme Court recognized that an attorney's errors *during an appeal on direct review* may provide cause to excuse a procedural default. 501 U.S. at 754. Wilkins, however, cannot avail himself of *Coleman* to excuse his procedural default, because he did not present his ineffective assistance of appellate counsel claim to the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 447 (2000) ("The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Dowling v. Sec'y for Dep't of Corr.*, 75 F. App'x 846, 847-48 (11th Cir. 2008) ("Because Dowling did not raise his ineffective assistance of appellate counsel claim in state court and is precluded from seeking additional review of that claim in state court, Dowling's ineffective assistance of appellate

counsel claim is procedurally defaulted and cannot be considered as cause for the default of his trial court error claim.").

### C.    Wilkins Sixth Amendment Claim Is Without Merit

Even if this court rejected the State's procedural default defense and concluded that Wilkins exhausted his Sixth Amendment claim by presenting it as "Point 2" of his direct appeal brief, he still would not be entitled to habeas relief.

The First DCA's summary rejection of Wilkins's claim on direct appeal would be subject to § 2254(d)'s deferential standard of review. *See Richter*, 562 U.S. at 99, 100. Wilkins would be required to show that "there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98. Wilkins fails to make that showing.

One theory that could have supported the First DCA's decision is that the trial court did not deprive Wilkins of his Sixth Amendment right to counsel for purposes of withdrawing his plea, because Wilkins was represented by conflict-free counsel— the Office of the Public Defender—during that critical stage of the proceeding, and Wilkins had no constitutional right to hybrid representation. *See Cross v. United States*, 893 F.2d 1287, 1291-92 (11th Cir. 1990) ("[A]n individual does not have a right to hybrid representation.") (citing cases). A fairminded jurist could concur in that determination.

Page 91 of 117

For all of the foregoing reasons, Wilkins is not entitled to habeas relief on Ground Eight.

**Ground Nine**          **"Petitioner asks this Court to determine on its own authority and rule that defendant was denied effective assistance of counsel when counsel failed to protect his 6th Amendment right to counsel free of conflict and his 14th Amendment right to Due Process, when trial court ruled defendant's _Rule 3.170(1)_ a nullity without appointing conflict-free counsel, resulting in a decision based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 14-15).**

Wilkins claims that Attorney Etheridge was ineffective when he "failed to contact defendant after a different sentence than promised (one that violated the plea agreement) was pronounced, and move to withdraw plea per defendant's instructions." (_Id_. at 15). Wilkins asserts that he exhausted this claim by presenting it as "Point 9" of his direct appeal, as "Ground 6" of his amended Rule 3.850 motion, and in his letter to the postconviction trial court dated December 5, 2015. (_Id_. at 15).

The parties agree that Wilkins presented this ineffective assistance claim to the state courts in his Rule 3.850 proceeding. (Doc. 1 at 15; Doc. 17 at 54).

**A.      Clearly Established Federal Law**

The clearly established federal law governing claims of ineffective assistance of counsel when the defendant has entered a *nolo contendere* plea, is the plea standard outlined above.

**B.      State Court's Decision**

Wilkins raised this claim in his letter to the postconviction trial court dated December 5, 2015. (Doc. 17-3, Ex. N at 167). Wilkins claimed that Etheridge was ineffective for: (1) failing to move to withdraw Wilkins's plea on the ground that he was sentenced outside the terms of the plea agreement; (2) failing to adopt or re-file Wilkins's *pro se* motion to withdraw plea; (3) failing to object to the trial court's failure to appoint conflict-free counsel to assist Wilkins in moving to withdraw his plea; and (4) failing to object to the trial court's striking of Wilkins's *pro se* motion to withdraw plea on the ground that Wilkins was unrepresented at the time he filed the motion. (*Id*.).

The state circuit court ruled as follows:

> On December 5, 2015, the Defendant filed a letter to the Court and enclosed a letter to his counsel requesting assistance in filing a "supplemental" motion for post-conviction relief regarding his counsel's alleged ineffectiveness for failing to "adopt" the Defendant's motion to withdraw plea filed after sentencing. At the time this letter was filed, the Defendant was represented by counsel, thus any amended motion for post-conviction relief filed at that time is a nullity.

Page 93 of 117

Moreover, the Defendant has already raised a claim that his counsel should have filed a motion to withdraw his plea. (See Ground One). Finally, as will be explained, the Court would not grant relief on such a claim based on the evidence received at the evidentiary hearing. The claims raised in the motion to withdraw plea are without merit. Attachment 11. The Court conducted an evidentiary hearing on December 23, 2015. The Defendant was represented by Bryan McLeod, Assistant Regional Conflict Counsel. The State was represented by Assistant State Attorney Robert Elmore.

(Doc. 17-3, Ex. N at 194).

Wilkins's Ground One of his amended Rule 3.850 motion claimed that Etheridge was ineffective "for failing to move to withdraw Defendant's plea when Defendant was sentenced outside terms of the plea agreement." (*Id.* at 20). The state circuit court denied relief on that claim for these reasons:

<u>Ground One</u>

The Defendant's first claim of ineffective assistance of counsel is that his trial counsel was ineffective for "failing to move to withdraw Defendant's plea when defendant was sentenced outside terms of the plea agreement." Essentially, Defendant claims that because the Court mistakenly pronounced sentence for attempted armed kidnapping after the State had already nolle prossed the charge, counsel was ineffective for failing to move to withdraw Defendant's plea.

As the First District Court of Appeal explained, "it is apparent from the record on appeal that error was *unintended* because the trial court *acknowledged* that the State nolle prossed count II. However, it is undisputed that the trial court improperly adjudicated appellant guilty and sentenced him for count II." <u>Wilkins v. State</u>, 90 So. 3d 305 (Fla. 1st DCA 2012) (emphasis added). The Court does not dispute that the

Page 94 of 117

Defendant was erroneously sentenced for a crime that was nolle prossed as a result of the plea agreement.

The Defendant claims that the correct remedy is not to correct the sentence, but rather to set aside the plea, vacate the judgment and sentence, and reinstitute the charges pending prior to the plea.FN2 However, the Defendant would not have been entitled to withdraw his plea because of an unintended error in the sentencing process.

> FN2  Indeed, if the Defendant had claimed that counsel should have requested specific performance of the plea agreement by requesting the Court strike the erroneous sentence on count two, the Defendant could not demonstrate prejudice in light of the relief already granted by the appellate court. The Defendant's judgment has already been corrected. Attachment 10.

The State honored its plea agreement by filing the *nolle prosequi* as to the attempted armed kidnapping charge. See O'Berry v. State, 114 So. 2d 1110 (Fla. 2d DCA 2013). As the First District Court of Appeal explained, "a *nolle prosequi* effectively ends the proceeding, and any action taken subsequent to the filing of the *nolle prosequi* is a nullity." Wilkins, supra, citing State v. Aguilar, 987 So. 2d 1233, 1235 (Fla. 5th DCA 2008) (citations omitted).

The Court recognizes that a Defendant is entitled to withdraw his plea when a Court declines to sentence a Defendant in accordance with a plea agreement. See Nichols v. State, 403 So. 2d 1089 (Fla. 1st DCA 1981); Williams v. State, 541 So. 2d 752 (Fla. 1st DCA 1989). However, that did not occur here. Rather, the Court simply made an inadvertent error by pronouncing sentence as to a count that had been nolle prossed.

It is important to bear in mind that once sentence has been imposed, to withdraw a plea a defendant must demonstrate a manifest injustice requiring correction. State v. Partlow, 840 So. 2d 1040 (Fla. 2003); Campbell v. State, 125 So. 3d 733 (Fla. 2013). Any attempt by

Defendant's counsel to argue that this unintended, easily correctable, sentencing error, one that was later described by the appellate court as a nullity, was a "manifest injustice" would clearly have been unavailing. Accordingly, the Defendant cannot show that his trial counsel was ineffective for failing to file a motion to withdraw Defendant's plea on that basis. See Johnston v. State, 63 So. 3d 730, 740 (Fla. 2011).

The Defendant also claimed in 2015 that his counsel should have filed a motion to withdraw plea by "adopting" the Defendant's pro se motion to withdraw plea. Presuming this claim is not time-barred,FN3 the Court finds that the Defendant is not entitled to relief. As the Court will explain in more detail, the Defendant's claim that he was misadvised as to his sentencing exposure is refuted by the record and not credible. The Defendant was made well aware that he could receive a life sentence when he entered his plea in this case. The record demonstrates that the Defendant was competent when he entered his plea. Any claim of trial court error is procedurally barred as it could have or should have been raised on direct appeal.

FN3  "An amended rule 3.850 motion . . . which merely enlarges or expands on issues raised in a timely original rule 3.850 motion should not be dismissed as untimely." Cooper v. State, 126 So. 3d 439, 440 (Fla. 4th DCA 2013) (punctuation omitted). The Defendant cannot raise new claims after the two year time period has elapsed, however. Lanier v. State, 826 So. 2d 460, 461 (Fla. 1st DCA 2002); Rincon v. State, 996 So. 2d 922 (Fla. 4th DCA 2008). The time limitations of rule 3.850 are jurisdictional. Salser v. State, 792 So. 2d 693 (Fla. 5th DCA 2001).

(Id. at 196-98). The First DCA affirmed without an opinion. (Doc. 17-5, Ex. T).

**C.    Section 2254 Review of State Court's Decision**

The First DCA's summary affirmance is an "adjudication on the merits" of Wilkins's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA rejected Wilkins's claim for the same reasons as the lower court. 138 S. Ct. at 1192.

The state court's rejection of Wilkins's ineffective assistance claim is consistent with the *Strickland* standard. A fairminded jurist could agree that Etheridge was not ineffective for failing to file Wilkins's proposed motion to withdraw plea, because (1) Wilkins was competent to enter the plea; (2) Wilkins's plea was knowing, voluntary, and uncoerced; (3) the State did not breach the plea agreement; and (4) the trial court's inadvertent sentencing error was not a viable basis for Wilkins to withdraw his plea. "[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

A fairminded jurist also could agree with the state court's decision that Etheridge was not ineffective for failing to object to the trial court's striking of

Wilkins's *pro se* motion to withdraw plea because the objection lacked merit. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019) ("It is not ineffective assistance of counsel to fail to make an objection that is not due to be sustained.").

Wilkins is not entitled to habeas relief on Ground Nine.

**Ground Ten**          **"Petitioner asks this Court to determine on its own authority and rule that defendant was unconstitutionally denied effective assistance of counsel when counsel failed to call his prior attorney to testify at the competency hearing, resulting in a decision based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 15-16).**

Wilkins claims that Attorney Hall was ineffective for failing to call Wilkins's former counsel Michael Griffith to testify at the February 17, 2010, competency hearing. (Doc. 1 at 16). Wilkins alleges that had Griffith been called as a witness, "he would have testified to the incompetency of his former client [Wilkins] and the outcome of the hearing would certainly have been different." (*Id.*). Wilkins claims that Griffith also would have testified "as to defendant's inability to testify relevantly, that he did not understand the adversarial nature of the prosecution, and his overall inability to understand the nature of his charges." (*Id.*).

The parties agree that Wilkins presented this ineffective assistance claim to the state courts in his Rule 3.850 proceeding. (Doc. 1 at 16; Doc. 17 at 58).

## A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel when the defendant has entered a *nolo contendere* plea, is outlined in the plea standard above.

## B.    State Court's Decision

Wilkins raised this claim in in his Rule 3.850 proceeding as "Ground 9." (Doc. 17-3, Ex. N at 32-33). The state circuit court denied relief for these reasons:

<u>Ground Nine</u>

The Defendant argues that his counsel was ineffective for failing to call Defendant's prior private counsel as a witness at Defendant's competency hearing. This claim is facially insufficient. The Defendant has not alleged facts showing that the lay testimony that Mr. Griffith could have offered, presuming it was admissible,FN5 would have had any reasonable probability of changing the outcome in light of the Court's conclusion that there was "overwhelming" evidence that Defendant was malingering and the expert opinion testimony showing that the Defendant was in fact competent to proceed. <u>See also</u>, <u>Attachment 7</u>.

FN5  <u>See</u> Fla. R. Crim. P. 3.212(a); <u>Clanton v. U.S.</u>, 488 F.2d 1069 (5th Cir 1974).

(*Id*. at 208). The First DCA affirmed without an opinion. (Doc. 17-5, Ex. T).

**C.    Section 2254 Review of State Court's Decision**

The First DCA's summary affirmance is an "adjudication on the merits" of Wilkins's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA adopted the lower court's reasoning. 138 S. Ct. at 1192.

Wilkins is not entitled to habeas relief because a fairminded jurist could agree with the state court's conclusion that Wilkins failed to establish prejudice under *Strickland*. *See Meders*, 911 F.3d at 1351 ("So long as any fairminded jurist could agree with the state court's ruling, [a reviewing federal court] must deny federal habeas relief."). Given the overwhelming evidence at the competency hearing that Wilkins was competent to proceed and was malingering, a fairminded jurist could agree that Wilkins failed to show there was a reasonable probability the result of the hearing would have been different had Griffith testified to his personal interactions with Wilkins and his lay opinion concerning Wilkins's competency.

Wilkins is not entitled to habeas relief on Ground Ten.

| Ground Eleven | **"Petitioner asks this Court to determine on its own authority and rule that defendant was unconstitutionally denied his 14th Amendment right to Due Process when trial court erred by not following *Fl. R. Crim. P. 3.210-3.212* concerning competency determination, which resulted in a decision based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 17).** |
|---|---|

Wilkins claims that the trial court violated his due process rights when it failed to follow the procedures outlined in Florida Rules of Criminal Procedure 3.210-3.212. (Doc. 17). Wilkins asserts that he exhausted this claim by presenting it as "Point 9" of his direct appeal, and as "Grounds 10 and 11" of his amended Rule 3.850 motion. (*Id.*). The State agrees that Wilkins exhausted his state court remedies. (Doc. 17 at 61).

This claim merely reargues the procedural competency issue raised in Ground Three, above. Wilkins exhausted this claim by presenting it as "Point 9" in his direct appeal. (Doc. 17-2, Ex. G at 241-44). *See* discussion *supra* Ground Three. For the reasons outlined in Ground Three above, Wilkins is not entitled to habeas relief on Ground 11. *See* Ground Three, *supra*.[10]

---

[10] Wilkins did *not* present this claim of trial court error in Grounds 10 and 11 of his Rule 3.850 motion. Grounds 10 and 11 were ineffective assistance of counsel claims based on Attorney Hall's and Attorney Etheridge's "fail[ure] to protect Defendant's Due Process rights when court erred by not following procedural law in regard to

**Ground Twelve**    **"Petitioner asks this Court to determine on its own authority and rule that defendant was unconstitutionally denied effective assistance of counsel when counsel failed to protect his 14th Amendment right to Due Process when trial court erred by not following *Fl. R. Crim. P. 3.210-3.212* concerning competency determination, which resulted in a decision based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 18).**

Wilkins claims that Attorney Hall was ineffective when he failed to object to expert testimony at the competency hearing that Wilkins was malingering. Wilkins also faults counsel for "not object[ing] to the numerous *Rule 3.210-3.212* violations stated in Ground Eleven." (Doc. 1 at 18).

The parties agree that Wilkins presented this claim to the state courts in his Rule 3.850 proceeding. (Doc. 1 at 18; Doc. 17 at 63).

A.    **Clearly Established Federal Law**

The clearly established federal law governing claims of ineffective assistance of counsel when the defendant has entered a *nolo contendere* plea is outlined in the plea standard above.

---

Defendant's competency." (Doc. 17-3, Ex. N at 33-36). The ineffective assistance claims are not the "same claim" as the trial court error claim. *Pietri, supra*. Wilkins recognizes that the claims are different, because he raised the ineffective assistance claim as a separate ground for relief (Ground Twelve) in his federal habeas petition. *See* discussion *infra* Ground Twelve.

**B.    State Court's Decision**

Wilkins presented his claim concerning Hall's failure to object to testimony of malingering as "Ground 8" of his amended Rule 3.850 motion. (Doc. 17-3, Ex. N at 31-32). Wilkins presented his claim concerning counsel's failure to object to the trial court's alleged violation of Florida's procedural rules as "Grounds 10 and 11" of his amended Rule 3.850 motion. (*Id.* at 33-36). The state circuit court denied relief on the claims as follows:

<u>Ground Eight</u>

The Defendant claims that his counsel was ineffective for failing to object to evidence that the Defendant was being untruthful during his competency evaluation. This claim is without merit. An expert is entitled to the opinion that a defendant is malingering. "Trial counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding." <u>Teffeteller v. Dugger</u>, 734 So. 2d 1009, 1023 (Fla. 1999).

. . . .

<u>Grounds Ten and Eleven</u>

In these two grounds, the Defendant asserts that his counsel was ineffective for failing to protect Defendant's due process rights when Court erred by not following procedural law in regard to Defendant's competency. These claims are facially insufficient and refuted by the record. The Defendant was repeatedly found to be malingering regarding his competency to stand trial. Even if the Court committed any sort of procedural error regarding the determination of the Defendant's competency, the Defendant has not shown that he was

prejudice by counsel's failure to object. The Court finds that in light of the overwhelming evidence presented to the Court at the Defendant's competency hearing that the Defendant was malingering, the result of the proceeding would have been the same. Again, any claim of trial court error is procedurally barred in this post-conviction proceeding.

(*Id*. at 208-09). The First DCA affirmed without an opinion. (Doc. 17-5, Ex. T).

## C.    Section 2254 Review of State Court's Decision

The First DCA's summary affirmance is an "adjudication on the merits" of Wilkins's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA adopted the lower court's reasoning. 138 S. Ct. at 1192.

The state postconviction court concluded, as a matter of state law, that the testimony of malingering was admissible and that Wilkins's proposed objection would have been overruled. This court must defer to the state court's determination of that state-law issue. "It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quoting *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005)).

Because Wilkins's proposed objection lacked merit and would have been overruled, counsel was not ineffective for failing to make that objection. *Id.* at 932 (holding that state court's determination that petitioner's proposed objection, which

was based on state law, lacked merit and would have been overruled precluded habeas relief on petitioner's claim that counsel was ineffective for failing to make that objection); *Herring*, 397 F.3d at 1355 (same).

Wilkins's remaining argument—that counsel was ineffective for not objecting to the trial court's alleged failure to follow Florida's procedures for determining his competency—is likewise unavailing. To the extent Wilkins's proposed objections are based on state law, for example the timing provisions of Fla. R. Crim. P. 3.210, the First DCA already determined, in denying Wilkins's claim on direct appeal, that the trial court committed no error. *See* note 9 *supra*. Thus, Wilkins's claim that trial counsel was ineffective for failing to make Wilkins's proposed state-law-based objections must fail.

To the extent Wilkins argues that counsel should have objected on federal due process grounds to the procedures used to determine his competency, this court's previous determination that the state court proceedings satisfied due process means that Wilkins's ineffective assistance claim necessarily fails. *See* discussion *supra* Grounds Three, Four. *See also Meders*, 911 F.3d at 1354.

The state court's rejection of this claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Wilkins is not entitled to habeas relief on Ground Twelve.

Page 105 of 117

**Ground Thirteen** **"Petitioner asks this Court to determine on its own authority and rule that defendant was unconstitutionally denied effective assistance of counsel when counsel failed to protect his 14th Amendment right to Due Process by abandoning the Motion to Suppress evidence of a short-barreled shotgun, which resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 19).**

Wilkins claims that Etheridge was ineffective for abandoning his motion to suppress evidence of a short-barreled shotgun. Wilkins explains:

> This was not only a viable defense, but the critical one that would prove the weapon did not belong to defendant as he claimed from the beginning. It is reasonable and likely that the trial court would have ruled to dismiss due to tampering of evidence by officers on the scene, and therefore the possibility of PBLs would not have existed.

(*Id*. at 19).

The parties agree that Wilkins presented this claim to the state courts in his Rule 3.850 proceeding as Ground 15. (Doc. 1 at 19; Doc. 17 at 66).

## A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel when the defendant has entered a *nolo contendere* plea, is outlined in the plea standard above.

Page 106 of 117

**B.    State Court's Decision**

The state circuit court denied relief as follows:

<u>Ground Fifteen</u>

The Defendant contends that his counsel was ineffective for abandoning a motion to suppress evidence of short-barreled shotgun. The record conclusively demonstrates that the Defendant is not entitled to relief on this claim. The Defendant specifically and knowingly waived any such defense when he entered his plea. <u>Attachment 1</u>, at 15-16. The Defendant is attempting to go behind his plea. A Defendant cannot go behind the plea and raise issues that were known when he entered his plea in a rule 3.850 motion. <u>Gidney v. State</u>, 925 So. 2d 1076 (Fla. 4th DCA 2006).

(Doc. 17-3, Ex. N at 211). The First DCA affirmed without an opinion. (Doc. 17-5, Ex. T).

**C.    Section 2254 Review of State Court's Decision**

The First DCA's summary affirmance is an "adjudication on the merits" of Wilkins's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Consistent with *Wilson*, this court presumes that the First DCA adopted the lower court's reasoning. 138 S. Ct. at 1192.

The state court's rejection of Wilkins's claim is consistent with clearly established federal law. As outlined above, a "defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all nonjurisdictional defects in that defendant's court proceedings." *United States v.*

*Yunis*, 723 F.2d 795, 796 (11th Cir. 1984). This includes any claim of ineffective assistance of counsel unless the deficient performance relates to the voluntariness of the plea itself. *See, e.g., McMillin*, 447 F.2d at 454; *Smith*, 711 F.2d at 682.

Wilkins does not contend that his plea was involuntary due to Etheridge's failure to pursue the motion to suppress, nor can he. Wilkins stated under oath at his plea hearing that (1) he understood that he was giving up the right to pursue the motion to suppress by entering his *nolo contendere* plea; (2) he was agreeing to abandon the motion to suppress, and (3) he believed that it was in his best interest to enter the plea. (Doc. 17-1, Ex. C at 245-46).

Based on Wilkins's sworn assertions at the plea hearing, a fairminded jurist could agree with the state court's conclusion that Wilkin's ineffective assistance claim was foreclosed by his knowing and voluntary *nolo contendere* plea. Wilkins is not entitled to habeas relief on Ground Thirteen.

**Ground Fourteen** **"Petitioner asks this Court to determine on its own authority and rule that defendant was unconstitutionally denied effective assistance of counsel when counsel failed to protect his 14th Amendment right to Due Process by abandoning the Motion to Rely on Insanity, which resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 20).**

Wilkins supports this claim by alleging: "Mr. Etheridge abandoned the motion to rely on the insanity defense. This was a viable defense." (Doc. 1 at 20). The parties agree that Wilkins presented this ineffective assistance claim to the state courts in his Rule 3.850 proceeding as Ground 13. (Doc. 1 at 20; Doc. 17 at 69).

## A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel when the defendant has entered a *nolo contendere* plea, is outlined in the plea standard above.

## B.    State Court's Decision

The state circuit court denied relief as follows:

<u>Ground Thirteen</u>

In this claim the Defendant asserts that his counsel was ineffective for failing to pursue insanity defense. The record conclusively demonstrates that the Defendant is not entitled to relief on this claim. The Defendant specially and knowingly waived any such defense when he entered his plea. <u>Attachment 1</u>, at 14-15. The Defendant is attempting to go behind his plea. A Defendant cannot go behind the plea and raise issues that were known when he entered his plea in a rule 3.850 motion. <u>Gidney v. State</u>, 925 So. 2d 1076 (Fla. 4th DCA 2006).

(Doc. 17-3, Ex. N at 209-10). The First DCA affirmed without an opinion. (Doc. 17-5, Ex. T).

**C.    Section 2254 Review of State Court's Decision**

The First DCA's summary affirmance is an "adjudication on the merits" of Wilkins's claim, and, therefore, is entitled to deference under § 2254(d). *Richter*, 562 U.S. at 99, 100. Pursuant to *Wilson*, this court presumes that the First DCA adopted the circuit court's reasoning. 138 S. Ct. at 1192.

The state court's rejection of Wilkins's claim is consistent with clearly established federal law. Wilkins does not contend that his plea was involuntary due to counsel's failure to pursue an insanity defense, nor can he. Wilkins stated under oath at his plea hearing that he understood he was giving up any defense of insanity by entering his *nolo contendere* plea, and that he was entering the plea because it was in his best interest. (Doc. 17-1, Ex. C at 244-45, 246).

Based on Wilkins's sworn assertions at the plea hearing, a fairminded jurist could agree with the state court's conclusion that Wilkin's ineffective assistance claim was foreclosed by his knowing and voluntary *nolo contendere* plea. Wilkins is not entitled to habeas relief on Ground Fourteen.

**Ground Fifteen**    **"Petitioner asks this Court to determine on its own authority and rule that defendant was unconstitutionally denied effective assistance of counsel when counsel failed to investigate any viable defense, which resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an**

**unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 20-21).**

Wilkins alleges that Etheridge "coerced him into making an involuntary plea for a life sentence while he was heavily drugged." (Doc. 1 at 21). Wilkins goes on to allege that Etheridge "should have reviewed his case and discovered previous counsel had a pending motion to suppress the shotgun and motion to rely on the insanity defense before the court as well as other pending motions." (*Id*.).

This court already disposed of Wilkins's claims that Etheridge coerced him into entering the plea, *see* Ground Seven *supra*; that Etheridge was ineffective for failing to pursue the motion to suppress, *see* Ground Thirteen *supra*; and that Etheridge was ineffective for failing to pursue an insanity defense, *see* Ground Fourteen *supra*. This court relies on its previous analysis of these issues and will not revisit them here. Wilkins is not entitled to habeas relief on Ground Fifteen.

**Ground Sixteen**    **"Petitioner asks this Court to determine on its own authority and rule that defendant was unconstitutionally denied effective assistance of appellate counsel when counsel failed to investigate any viable grounds for appeal, which resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence known by the trial judge and an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 21-22).**

Wilkins claims that his appellate counsel was ineffective for filing an *Anders* brief, and for failing to discover the trial court's sentencing error and "the numerous

grounds appellant has brought forward in this petition and his other appeals." (Doc. 1 at 22). Wilkins concedes that he never presented this claim to the state courts. (Doc. 1 at 22, 24). The State asserts a procedural default defense based on Wilkins's failure to exhaust. (Doc. 17 at 74-80).

### A.    Wilkins's Claim Is Unexhausted And Procedurally Defaulted

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court. The exhaustion requirement is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation." *Davila v. Davis*, 582 U.S. ___, 137 S. Ct. 2058 (2017) (internal quotation marks and citations omitted).

There is no dispute that Wilkins's ineffective assistance of appellate counsel claim is unexhausted. (Doc. 1 at 22, 24, 38). The record confirms that Wilkins did not raise this claim in any state proceeding. The claim is now procedurally barred as untimely under Florida state rules, because it has been more than four years since Wilkins's judgment and sentence became final on direct review. *See* Fla. R. App. P. 9.141(d)(5).

Wilkins makes none of the requisite showings to excuse his procedural default. He relies on *Martinez v. Ryan* to argue that he is entitled to habeas review

despite his failure to exhaust. (Doc. 1 at 24, 38). The Supreme Court, however, has

declined to extend *Martinez* to claims of ineffective assistance of appellate counsel.

*Davila*, 137 S. Ct. at 2063, 2065-70. Wilkins's procedural default bars habeas review

of Ground Sixteen.

| | |
|---|---|
| **<u>Ground Seventeen</u>** | **<u>"Petitioner asks this Court to determine on its own authority and rule that the trial court erred when it sentenced him in excess of the plea agreement, violating his 14th Amendment right to Due Process which resulted in a decision that was contrary to and involved an unreasonable application of clearly established Federal law as established by the Supreme Court." (Doc. 1 at 22).</u>** |

Wilkins alleges: "[T]he trial court erred in failing to nolle prose Count II and

sentenced him to an additional life sentence, violating his plea agreement." (Doc. 1

at 22). Wilkins asserts that he presented this claim in his direct appeal, and also in

his Rule 3.850 proceeding as "Ground One." (*Id*. at 22-23).[11]

The State argues that this claim is not cognizable on habeas review because

the State *nolle prossed* Count II, and the trial court's inadvertent sentencing error

was cured without Wilkins suffering any constitutional harm. (Doc. 17 at 81).

---

[11] Wilkins did *not* present this claim of trial court error in his Rule 3.850 proceeding. The issue he presented in Ground One of his Rule 3.850 motion was an ineffective assistance of trial counsel claim. (Doc. 17-3, Ex. N at 20).

The State is correct. The trial court's inadvertent sentencing error has been corrected by the state court. The cured sentencing error does not undermine the validity of Wilkins's *nolo contendere* plea or the constitutionality of his confinement. This claim presents no basis for federal habeas relief.

**Ground Eighteen** <u>**"Petitioner asks this Court to determine on its own authority and rule that defendant was unconstitutionally denied effective assistance of counsel as counsel failed to request specific performance of the plea and protect his right to Due Process when trial court sentenced him in excess of the plea agreement, resulting in a decision based on an unreasonable application of federal law as determined by the Supreme Court." (Doc. 1 at 23).**</u>

Wilkins's last claim reargues his prior claim that Etheridge was ineffective for failing to file a motion to withdraw plea based on the trial court's sentencing error. (Doc. 1 at 23). The parties agree that Wilkins presented this claim to the state court in his Rule 3.850 proceeding. (*Id*.; Doc. 17 at 82).

Wilkins presented this claim to the state court as "Ground One" of his amended Rule 3.850 motion. (Doc. 17-3, Ex. N at 20-21). This court already reviewed the state court's rejection of the claim. *See* Ground Nine *supra*. This court relies on that analysis and will not re-analyze the issue here. For the reasons discussed in Ground Nine, above, Wilkins is not entitled to habeas relief on Ground Eighteen.

## IV.    CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and*

that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Lyndal Kenneth Wilkins*, Santa Rosa County Circuit Court Case No. 2007-CF-1367, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case file.

At Pensacola, Florida, this 1st day of February, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**